**DAVIS et al. v. HUDGINS et al. (No. 8445.)**

(Court of Civil Appeals of Texas. Dallas. Oct. 16, 1920.)

**1. Mines and minerals ⬥⬥⬥101—Agreement created trust, and not association or partnership.**

Agreement between organizers of an oil company *held* to have created a trust for such purpose, and not an unincorporated joint-stock company or partnership.

**2. Mines and minerals ⬥⬥⬥101—All stockholders of trust to operate oil company not necessary parties to suit for accounting, etc.**

The relation existing between parties owning shares in a trust to operate an oil company not being that of partners in the ordinary sense, it was not necessary that all shareholders in the association be made parties to a suit between shareholders involving its affairs and seeking accounting, dissolution, etc.

**3. Associations ⬥⬥⬥20 (2) — Suits may be brought by or against part of members.**

Suits in equity may be brought by or against some of the members of an association or trust as representatives of all the members, particularly where defendants are managing officers or trustees.

**4. Mines and minerals ⬥⬥⬥101—Evidence insufficient to authorize appointment of receiver.**

In an action by minority shareholders in a trust to operate an oil company charging misappropriation of funds against defendant trustees, etc., and asking accounting and dissolution, evidence of defendant trustees' fraud, mismanagement, etc., *held* insufficient to authorize appointment of receiver.

**5. Appeal and error ⬥⬥⬥955—Receivers ⬥⬥⬥8—Appointment ordinarily within discretion.**

The appointment of a receiver rests largely in the discretion of the court, and appellate courts will not ordinarily interfere therein, unless an abuse of discretion appears.

**6. Receivers ⬥⬥⬥38—Remedy should be cautiously applied.**

The remedy of a receivership in all cases is to be cautiously applied, and receivers should not be appointed except on clear showing that applicant's rights imperatively demand the remedy.

Appeal from District Court, Dallas County; W. C. Kimbrough, Special Judge.

Suit by B. E. Hudgins and others against J. C. Davis and others. From judgment for plaintiffs, certain defendants appeal. Reversed, and cause remanded.

Weeks, Morrow, Francis & King, of Wichita Falls, for appellants.

Scott & Fagan, of Dallas, for appellees.

TALBOT, J. This suit was instituted by B. E. Hudgins, C. T. Jackson, W. E. Corbin, J. C. Wright, and Humphreys & Vanston, "on behalf of themselves and the minority stockholders" of an alleged copartnership known as the Davis-Coggins Oil Company, against J. C. Davis, B. F. Coggins, A. O. Allen, and J. F. Tucker, as trustees of all the stockholders of said Davis-Coggins Oil Company, which was organized under a trust agreement executed on the 4th day of January, 1918. This trust agreement shows, among other things, that the subscribers transferred to said trustees of the Davis-Coggins Oil Company certain properties therein described, and authorized them, for the purpose of defining the interest of subscribers, to issue 2000 shares of stock of the par value of $100 each. The trust agreement further shows that the election of new trustees was authorized, and that the trustees were given the power to transact all the business of the association or company and the exclusive management and control of its property. It provides for annual meetings of the stockholders, and declares they shall not be personally liable. It contains the following provision:

"Shareholders in said company shall have no legal right to the trust property, either real or personal, of any character, held from time to time by the trustees, and especially shall they have no right to call for any partition of the trust property or dissolution of the trust, but the shares shall be personal property, carrying the right of division of the profits, and, at the termination of the trust, resulting either from the expiration of the period fixed for its existence or from dissolution otherwise effected, to a division of the principal and profits."

The trust agreement further provides that the death, insolvency, or bankruptcy of a shareholder, the transfer of his interest by sale, gift, or otherwise, during the continuance of the trust, shall not operate as a dissolution of the company or determine the trust, nor shall it have any effect upon the company, its operation or mode of business; nor shall it entitle his heirs, assigns, or representatives to an account or to take any action in the courts against the company, its members, trustees, officers, or its property or business operations, but they shall simply and only succeed to the rights of the original member or shareholder; that the trustees may adopt a constitution and by-laws not inconsistent with the provisions of the trust agreement or the laws of this state or of the United States, and adopt a common seal; that they shall have the power to vote in person or by proxy any stock belonging to the trust, and to collect, receive and receipt, for the dividends thereof; to collect, sue for and receipt for all sums of money coming to the trust; to employ counsel; to begin, prosecute, and settle suits at law in equity and to compromise or refer to arbitration in favor of or against the

⬥⬥⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

trustees; that the trustees shall, by vote of a majority of the board, have full power to do all things in their judgment, in the management and conduct of the business of the trust. which is declared to be the manufacture and sale of the products of petroleum, the production of oil, gas, or other minerals and the transportation of the same, or the doing of anything properly incident thereto, and, further, in the conduct of the business, to execute contracts in the name of the Davis-Coggins Oil Company, or in the name of the trustees, as may be necessary or convenient; to purchase, contract for, lease, or otherwise acquire such property, make such repairs, extensions, and additions as they may deem necessary or proper; to sell and convey any part of the property of the trust, and to borrow money on the credit of trust, etc.; and to do all things necessary or advisable for the successful management of the business and affairs of the trust, but shall have no power to bind the shareholders personally, and that in every written contract entered into by the trustees they shall refer to this limitation of their power. The trust agreement further provides that the company may sue or be sued in the company's name, or suit may be brought or defended in the names of the trustees; that the trustees shall elect from among their members a president and vice president of the board, and shall elect a secretary and treasurer, and shall have the power to appoint other officers; that stated meetings of the trustees shall be held as they may, from time to time by vote or by law, prescribe, and other meetings shall be held from time to time upon the call of the president or three trustees.   It is further provided by the trust agreement that the trustees shall not be liable for errors of judgment, either in holding property originally conveyed to them or in acquiring and afterwards holding additional property, nor for any loss arising out of any act or omission on their part in the execution of the trust, and that they shall not be required to give any bond to secure the due performance of the trust; that the trust created shall continue for 21 years after the death of the last survivor of the original trustees, at which time the then board of trustees shall proceed to wind up its affairs, liquidate its assets, and distribute the same among the holders of preferred and common shares of stock.   But it is provided that two-thirds of the shareholders, by vote at a meeting called for the purpose, may sooner terminate or renew the trust.

Plaintiffs set out in their petition the trust agreement in full and allege: That a partnership was thereby created. That the plaintiffs and other minority stockholders were, on or about the 4th day of January, 1916, induced by the defendant J. C. Davis, and the then trustees, J. Fred Smith and A. C. Parker, to enter into the joint enterprise.

That plaintiffs, by reason of the representations of the defendants, their agents and representatives, became subscribers and purchased stock of the Davis-Coggins Oil Company in the following amounts: B. E. Hudgins, 10 shares; W. E. Corbin, 12 shares; C. T. Jackson, 40 shares; J. C. Wright, 10 shares; and Humphreys & Vanston, 10 shares.   That the minority stockholders for whom this suit is brought own approximately 760 shares of the capital stock of the association.   They further allege, in substance: That the defendants, in violation of the trust agreement, by resolution conveyed all the assets of the company to defendant J. C. Davis, vesting in him the exclusive right to manage, control, and sell said assets.   That Davis, Coggins, and Smith have violated the trust agreement by issuing to themselves more than $150 worth of stock, designated as promotion stock, for which they paid nothing, and registered this stock in their individual names.   That the association was capitalized for $200,000, and that practically all of the stock paid in was paid in by plaintiffs, amounting to $36,000.   By subsequent agreement of Davis et al., the promotion stock was to be placed in the hands of C. E. Hudgins as trustee, subject to condition that in event that said property and assets should sell for cash in excess of cash capital paid in by plaintiffs, then the cash capital, plus the said promotion stock, should participate in any excess between the cash capital paid in.   That no part of the agreement has been kept.   That all funds furnished, to be furnished or collected by the association, were to be used for drilling purposes; that in violation of representations made to minority stockholders and for the purpose of defrauding them out of the fund advanced by them, Davis, Coggins, and Smith entered into a contract among themselves to purchase and did purchase, certain land and leasehold rights, and as individuals attempted to convey to themselves as trustees of the association, paying themselves $15,000 of the fund provided for the drilling purposes, which purchases were worthless and of no value to plaintiffs, and a fraud upon the minority stockholders.

That said defendants have had exclusive control and management of the association property and business; that there has been a production of 25 barrels of oil per day for three years of the value of $2.50 per barrel.   That the fund so produced has been dissipated by defendants, and no account made of it; that plaintiffs have inquired concerning the disposition of this fund, but defendants, and especially J. C. Davis, has informed plaintiffs the same was being spent in various ways, and that he was unable to give an account or make statement as to what purpose the same was spent.   That plaintiffs have been informed that defendants, and particularly J. C. Davis, has

used the receipts from the sale of oil for his individual use in violation of the trust agreement.

That notwithstanding plaintiffs, since the 4th day of August, 1916, have made diligent efforts to induce Davis to furnish plaintiffs and minority stockholders a detailed statement of the disbursements of the association, he has failed and refused to do so.

That the trust agreement is in violation of law, in that it establishes, or attempts to establish, a perpetuity and is void, and that defendants and each of them acting thereon is without authority to control and manage the affairs of the association. That if the agreement is valid defendants have failed to carry out a single provision of it. That no meeting has ever been held since the execution of the agreement, and defendants have exercised their personal feelings and desires in the management of the affairs of the association as if it were their individual property. That defendants have denied the plaintiffs and minority stockholders the right to obtain or receive any information as to the conduct of the business of the association, or as to the disposition made and being made of its oil, or what disposition has been made of the funds subscribed by the stockholders for drilling fund, and concealed from plaintiffs their conduct of the business of the association.

Plaintiffs pray that on hearing of the petition herein an accounting be had of the partnership funds; that a dissolution be decreed; that the affairs of the partnership be wound up; that the funds, property, and assets be divided; and that preliminary thereto a receiver be appointed. The petition of the plaintiffs was sworn to by J. C. Wright, one of their members and duly filed.

The defendants appear to have been duly cited, but none of them, except J. C. Davis, appeared. The defendant Davis, acting for himself and as one of the trustees of the Davis-Coggins Oil Company, alleged by him to be a joint-stock association pleaded in abatement of the plaintiffs' suit that plaintiffs' petition "alleges a partnership, but does not show who the partners are, except to show that a large number of them are not made parties to the suit," and asserted that no suit for a recovery for and dissolution of the partnership could be maintained until the partners were before the court. This defendant, subject to his plea in abatement, pleaded a general demurrer and special exceptions to the plaintiffs' petition. The first special exception is to the effect that plaintiffs' petition shows on its face that all the partners are not made parties. The second is to the effect that the petition only prays for the appointment of a receiver, and asks for no other relief or redress. The third is that the allegations do not show sufficient or legal authority for a part of the members of the partnership to bring the suit for the balance of them and that no facts are shown to indicate that those not named are parties to this suit in any manner. And the fourth is that the allegations show conclusively on their face that the Davis-Coggins Oil Company is not a partnership, but is a joint-stock association. The defendant further pleaded a general denial, and denied specially "that plaintiffs have authority to represent all the other partners, and deny that the Davis-Coggins Oil Company is a partnership; denies any intention or act to defraud any of the stockholders; denies that any of the company's funds were in any way misapplied or misappropriated. Said defendant denies any mismanagement as alleged, and says that if there was such mismanagement, same would not constitute ground for a receivership. Said defendant denies that he has refused to call a stockholders' meeting, and says he is willing to have one any time, and would be willing for this court to issue a mandatory injunction requiring him to do so. Said defendant denies that he has failed to give statement as to the condition of the affairs of said company, and attaches hereto copies of statements which have been given and makes same a part of this answer as to all facts contained in said statements. Said defendant avers, however, that he was under no legal duty to furnish statements. Books showing the true condition of the affairs of said company, open to the inspection of any stockholder, have been kept at all times. Said defendant alleges that said company is solvent, owes no debts, has money in the bank as shown by said statements. That said property is oil property, consisting of production, and is being managed in a careful and prudent manner. That the trustees of said company are now about to sell the assets of said company, or at least a portion of same, for a fair and equitable price to third parties, and the appointment of a receiver would interfere with said sale, would affect the good standing of said company, and cause it irreparable loss."

On the 11th day of March, 1920, plaintiffs' application for the appointment of a receiver came on to be heard, and the demurrers were overruled. Then the court, apart from the sworn pleadings, heard the oral testimony of several witnesses introduced by the respective parties, was of opinion that the application should be granted, and thereupon, by order and decree entered, appointed R. Sneed Kimbrough receiver to take charge of, keep possession of, and hold subject to the further orders of the court all of the assets and property owned or belonging to the Davis-Coggins Oil Company. From this order and judgment of the court the defendant J. C. Davis for himself and the Davis-Coggins Oil Company appealed.

[1-4] The first question arising on the appeal is whether the agreement entered into between the parties to the suit, and under the terms on which they organized and were conducting the business in which they were engaged, created a partnership or an unincorporated joint-stock company, or a trust as distinguished from a partnership or such company. We have no statute defining an unincorporated joint-stock company or association, and we gather from decisions and elementary works that some of them combine the elements of both partnership and trust, while others are essentially trusts and not partnerships. This we think is undoubtedly true, but it is equally true that it is frequently a difficult problem to determine the line that divides them. We shall not undertake to point out this line of demarcation as shown by the authorities, but shall content ourselves, for the purposes of this opinion, with the statement that we have examined the trust agreement in question and the authorities at our command, bearing upon the subject, as carefully as we have been able to do, and conclude that said agreement created a "trust," and not a company, association, or partnership. The written articles of association here are very similar, in essential particulars, to those expressed in the instrument involved in the case of Bingham v. Graham, 220 S. W. 105, and in that case it was held that the "association" belonged to the class designated as "trusts" by Mr. Wrightington in his work on Unincorporated Associations. If our conclusions that the trust agreement here in question created a trust as distinguished from a partnership is correct, then the contention of appellant to the effect that the suit ought to be abated for the want of necessary parties should not be sustained. The relation existing between the parties not being that of partners in the sense that the trust agreement created an ordinary partnership, it was not necessary that all of the stockholders of the association be made parties to the suit. While the rule is well established that all parties in interest ought to be made parties, there are exceptions to the rule. The case, as shown by the pleadings, is one in which the defendants, trustees, are sued by some of the beneficiaries, not only for themselves, but for all the minority stockholders of the association, alleging breach of trust, misapplication of trust funds and assets of the association, for their own personal gain and profit, etc., and praying for the appointment of a receiver. Although proper parties, it was not essential to the right of the named plaintiffs to bring and maintain this suit that all stockholders of the association, not named as plaintiffs, but in whose behalf the suit was brought, should appear as active parties to the suit. We understand it is well established that suits in equity may be brought by or against some of the members of an association or trust like the one under consideration as representatives of all the members. This seems to be especially true in such cases where, as here, the defendants were managing officers or trustees. Such cases simply declare the equitable doctrine of virtual representation, and the doctrine has in many cases been applied to members of unincorporated associations. The rule has been applied in a suit to enjoin a strike of laborers, the court holding that it was sufficient to bring in the leaders of the strike to represent the organization, regardless of their official relation to the society. American Steel, etc., v. Wire Drawers, etc., Nos. 1, 3 (C. C.) 90 Fed. 598. In Ruling Case Law, vol. 20, § 9, the rule is stated thus:

"As an exception to the rule that all persons having an interest in the subject-matter of an equity suit must be made parties, the doctrine of virtual representation, which originated at an early date, recognizes the right of a few persons to sue for themselves and all others similarly situated. Under this doctrine, the persons who are not joined by name as parties are in a sense before the court. They have been called quasi parties, and have even been said to be parties in substance and legal effect. In all cases to which the doctrine of representation applies there must be joined as parties persons who fairly represent the interest or right involved, so that it may be tried fairly and honestly. It is sufficient if the parties before the court enable it fairly and fully to adjudicate the question involved. The parties represented must have a common interest with those before the court, and consequently the parties before the court cannot act as representatives if their interests are antagonistic to those who would be represented. The most frequent application of the doctrine of virtual representation is to members of a class. And while this doctrine has been applied to the members of a class who have a common or general interest, and it is difficult or inconvenient to make all of them parties, though they are not numerous, yet many decisions have established the rule that the doctrine applies only where the persons interested are numerous, so that it would be impracticable or inconvenient to make all of them parties. And so, a suit in equity may be brought by some of the members of an unincorporated association as representatives of all the members, whether organized for public or private purposes, and in some of the cases relating to members of such associations stress has been laid on the fact that the members were numerous. The doctrine of representation has also been recognized in cases of trusts; so that persons beneficially interested are considered as represented by one occupying a trust relation, especially when the cestuis que trusts are numerous, so that it would be impracticable to bring all of them before the court."

In section 11 of the authority just quoted from it is said:

"Apart from the question of the parties being numerous, the rule of representation has been applied to defendants representing as trustees all parties having a beneficial interest in the subject-matter."

We think the plea of nonjoinder of parties in this case was properly overruled.

[5, 6] The next question for consideration is whether or not the trial court was authorized, under the evidence adduced, to appoint a receiver. Our conclusion is, this question should be answered in the negative. The hearing of the application for a receiver was not submitted and determined on the sworn pleadings of the parties. Apart therefrom, and as a basis for the court's action, oral testimony of witnesses was heard. Admitting for the purposes of this appeal that the appellees' petition showed a cause of action, and that the facts alleged were sufficient to justify the court, in the exercise of a sound discretion, to grant the prayer for a receiver, yet, in the opinion of this court, the testimony introduced, and upon which the court evidently predicated its decision, was wholly insufficient to authorize the appointment of a receiver, and for that reason the judgment must be reversed. In reaching this conclusion we are not unmindful of the prevailing rule that the appointment of a receiver rests largely in the discretion of the court, and that the appellate courts will not ordinarily interfere therein unless an abuse of discretion appears. It is well said, however, that the remedy of a receivership is in all cases to be cautiously applied, and that receivers should not be appointed except on a clear showing that the applicant's rights imperatively demand it. Galvin v. McConnell, 53 Tex. Civ. App. 486, 117 S. W. 211; People's Inv. Co. v. Crawford, 45 S. W. 738. The record discloses the formation of a trust, and that by the declaration of trust executed the management of all the affairs of the association so formed was vested in a named board of trustees and their successors, the board having the power to elect a president, vice president, secretary, and treasurer, and to create such other offices and appoint such other officers as the board might deem proper. The instrument further vests the title to all property acquired or to be acquired by the association in such trustees as joint tenants. Upon the trustees is conferred, among other things, full power and authority, upon a majority vote of the board, to conduct the business and to do and perform all things which in their judgment might be necessary in the management and conduct of the business. The trustees by the instrument referred to are given the power and authority, not only to manage the property of the association, but to "invest, reinvest, and dispose of the same, and to collect and receive and distribute the in-

come and profits therefrom for the benefit of the holders of the certificates of shares from time to time issued and outstanding under said instrument, in the manner and subject to the stipulations and limitations therein contained." It is stipulated that "the trustees shall have and exercise the exclusive management and control of all property at any time belonging to the trust," with all the rights and powers of absolute owners thereof, subject only to the purposes of the agreement entered into and in the conduct of the business; to execute contracts in the names of the trustees as may be necessary or convenient; to purchase, contract for, lease, or otherwise acquire such property as they may deem necessary or proper; and to sell and convey any part of the property of the trust.

A detailed statement in this opinion of the testimony is impracticable. A careful examination of it, however, has convinced us that it is too lacking in probative force to justify the conclusion that defendants have been guilty of such fraud, mismanagement of the property and affairs of the association in question, or dissipation of its assets as justified the appointment of a receiver. The testimony of the witnesses offered by appellees as to some of the charges of wrongdoing on the part of the defendants is of a negative character, and insufficient to sustain any of them that would warrant the appointment of a receiver; while the testimony of the witnesses offered by the defendants shows conclusively that no ground for the appointment of a receiver existed at the time of the hearing of the application therefor. The charge and contention that the trustees failed to call the annual meetings, or meeting for the election of trustees as provided for in the trust agreement, is based upon the testimony of appellees' witnesses, to the effect that they had no knowledge of any such calls, or meetings, whereas the testimony of the witnesses tendered by the defendants show that such meetings, practically, as directed by the terms of the trust agreement, were called.

The charge that the trustees in control of the business of the association refused to permit the stockholders to investigate its affairs or to have a voice in the selection of the officers of the association is not sustained by the testimony of the plaintiffs' witnesses and disproved by the testimony of the defendants' witnesses. Besides, the trust agreement, as we understand it, shows that the trustees were authorized and empowered to select the company's officers. We do not think there is any testimony to warrant the conclusion that the defendants or trustees surrendered to J. C. Davis alone control of the assets of the association. Nor do we think that the evidence warrants the conclusion that the books of the association

were never opened by the trustees to the inspection of the stockholders and no account of the disposition of its funds kept. On the contrary, we think it very conclusively appears from the testimony in the record that books of the association were opened, and an account, whether entirely accurate or not, was kept. The purchase of the 11 acres of land described in plaintiffs' petition and the appropriation of $15,000 in payment therefor out of the money received from stockholders was not, we think, in excess of or in violation of the powers vested in them by the terms of the trust agreement. This land, it appears, was purchased for the association, and is held by the trustees, like other property over which they were given full and absolute control, for the benefit of the association. Nor do we think the issuance of what is termed "promotion stock" in violation of the trust agreement or the authority given thereby to the trustees, or operated to render the company insolvent.

Upon the whole we conclude that the facts presented fail to disclose any such invasions of the rights of the plaintiffs, or danger that the property of the association in question will not be preserved, as authorized the appointment of a receiver. This court has heretofore said that the appointment of receivers "is regarded as one of the most difficult and embarrassing duties which a court of equity is called upon to perform," and is not to be exercised doubtingly, but that the court must be convinced that the relief is needful, and that it is the appropriate means of securing an appropriate end. Harris v. Hicks, 13 Tex. Civ. App. 134, 34 S. W. 983. The petition for the appointment of a receiver was verified by the affidavit of the plaintiff J. C. Wright, and should it be conceded that had the application for the appointment of a receiver been submitted on the petition and answer and receiver appointed, we would not be warranted in disturbing the court's action, yet it is clear that the oral testimony of Mr. Wright, given upon the hearing, as it appears in the statement of facts sent to this court, does not support the allegations of the petition sufficiently to justify the appointment made.

The uncontroverted evidence failing to justify the appointment of a receiver, the judgment is reversed, and the cause remanded.