## ROSS AMIGOS OIL CO. et al. v. STATE.

### No. 10600.

Court of Civil Appeals .of Texas.
San Antonio.

July 19, 1939.

Rehearing Denied Aug. 16, 1939.

Mann & Mann and Max A. Mendlovitz, all of Laredo, for appellant.

Gerald C. Mann and Geo. W. Barcus, both of Austin, and Edwin D. Guinn, of Rusk, for the State.

SMITH, Chief Justice.

This action was brought by the State of Texas against Ross Amigos Oil Company and its former directors to recover the amount of annual franchise tax alleged by the State to have accrued during the years 1930 to 1938, inclusive. From a judgment in favor of the State as prayed for the corporation has appealed.

The Oil Company was incorporated and its charter issued by the Secretary of State in 1922, and it paid its annual franchise tax up to 1930. Upon default for 1930, and in due course (in August, 1930), as provided by law, the Secretary of State, after notice, forfeited the Company's right to do business because of the default, as provided in Arts. 7091 and 7092, R.S.1925.

In 1938 the Corporation was dissolved by consent of its stockholders, but in the meantime it had continuously prosecuted the business for which it was chartered, that is, to own and operate producing oil wells in this State. Also, during ·that period it had complied with the several Federal and State laws requiring it to make periodical reports and pay gross receipts taxes annually to appropriate departments of the State and Federal governments. In short, the corporation conducted its business during the period of its default as it could and would have done if not in default of payment of its franchise tax, complying with all the requirements of the law, except the requirement to pay its franchise tax.

The resulting question is: Was the corporation liable to the State, in the interval, for franchise tax levied by law upon corporations of its class? The question must be decided upon a construction of appropriate statutes, and not having been previously adjudicated in like or analogous reported cases in this State, it is one of first impression here. We come, then, to the appropriate statutes, which will now be summarized sufficiently to develop the controlling question, without setting them out in full. (All italics ours.)

It is provided that: "Except as herein provided, all corporations now required to pay an annual franchise tax shall, between January 1st and March 15th *of each .year,*

make a sworn report to the Secretary of State * * * showing" its condition on the last day of the preceding year, in default of which report it shall be liable for a penalty of 10% of the "amount of the franchise tax ·due by such corporation * * * *together with its franchise tax.*" Art. 7089, R.S.1925, as amended by Acts 1931, 42d Leg. p. 441, Ch. 265, § 2, Vernon's Ann.Civ.St. art. 7089.

It is provided that, "Except as herein provided, every domestic * * * corporation heretofore or hereafter chartered or authorized to do business in Texas, shall, on or before May 1st *of each year,* pay *in advance* to the Secretary of State a franchise tax for the year following," to be computed upon the report of its condition required in Art. 7089, supra. Art. 7084, R.S.1925, as amended by Acts 1931, 42 Leg. p. 441, Ch. 265, § 1, Vernon's Ann. Civ.St. art. 7084.

It is provided that if "any domestic corporation" shall fail to pay the tax provided in Art. 7084, supra, when due as provided,. it shall be liable for a penalty of 25% of the amount of the delinquent tax, and if said tax and penalty be not paid in full by July 1 thereafter, the corporation shall forfeit its right to do business in Texas, such forfeiture to be effectuated by the Secretary of State as therein provided, after notice, and the corporation shall thenceforward be denied the right to bring or defend suits in the courts of the State, unless its right to do business shall be revived (as provided in Art. 7092, now to be noticed). Art. 7091, R.S. 1925.

It is provided in Art. 7092, R.S.1925, as follows: "The Secretary of State, shall during the month of May of· each year, notify each domestic and foreign corporation which may be or become subject to a franchise tax under any law of this State, which has failed to pay such franchise tax on or before the first day of May, that unless such overdue tax together with said penalty thereon shall be paid on or before the first day of July next following, the right of such corporation to do business in this State will be forfeited without judicial ascertainment. * * * Any corporation whose right to do business may have been forfeited, as provided in this chapter, shall be relieved from such forfeiture by paying to the Secretary of State any time within six months after such forfeiture the full amount of the *franchise tax and penalty* due by it, together with an additional

amount of five per cent of such tax *for each month,* or fractional part of a month, which shall elapse after such forfeiture; provided, that such amount. shall in no case be less than five dollars. When such tax and all penalties shall be fully paid to the Secretary of State, he shall revive the right of the ·corporation to do business within this State by cancelling the words, 'right to do business forfeited,' upon his record and endorsing thereon the word, 're-vived,' and the date of such revival. If any domestic corporation whose right to do business within this State shall hereafter be forfeited under the provisions of this chapter shall fail to pay the Secretary of State, on or before the first day of January next ·following the revival, the amounts necessary to entitle it to have its right to do business .revived under the provisions of this chapter, such failure shall constitute ·sufficient ground for the forfeiture, by judgment of any court of competent jurisdiction, of the charter of such ·domestic corporation."

And it is provided in Art. 7095: "The Attorney General shall bring suit *therefor* against any such corporation which may be or become subject· to or liable *for any franchise tax or penalty under this law;* and, in case there may now be or shall hereafter exist valid grounds for the forfeiture of the charter of any domestic private corporation, or failure to pay any franchise tax or franchise taxes or penalty or penalties .to which it may have become or shall hereafter be or become subject or liable under this or former law, he shall bring suit for a forfeiture of such charter. * * *"

It is further provided in Art. 7097 that if a corporation is actually in process of liquidation its franchise tax for the period of liquidation shall be reduced by computing such tax upon the then condition of the corporation.

It should be noted here that the Attorney General did not exercise the authority granted him in Art. 7095 to bring any suit against appellant to forfeit its charter because of failure to pay the franchise tax, or upon any other ground. Nor did the corporation bring or defend any suits in the courts of the State after the forfeiture of its right to engage in business.

■■ We have reached the firm conclusion that when the statutes are construed together, as they should and must

be, they express a clear intention upon the part of the Legislature to exact payment of the annual franchise tax of domestic corporations, such as appellant, so long as their charter and charter powers are in operating or operative effect, unaffected by the forfeiture in the meantime of its legal right to engage in business because of its default in the payment of the prescribed tax.

The requirements that such a corporation report its condition "each year," and pay the tax computed thereon "each year," is not susceptible of the construction, urged by appellant, that the withdrawal of the *legal* right to engage in business as one of penalties of default, has the effect of relieving the corporation of liability for the tax. The corporation may not avoid its liability by this simple process of evasion.

But that is not all. Besides the positive and unequivocal provisions of Arts. 7084 and 7089, the provisions of Arts. 7091 and 7092 emphasize the duty to pay the tax, if not by express language then certainly by necessary implication. This emphasis is repeated by the provision in Art. 7097 requiring the corporation to pay the tax, modified by the condition of the corporation, even while in process of liquidation.

And, lastly, the obligation, even if rendered uncertain by intervening provisions, is clinched by the requirement, in Art. 7095, that the Attorney General shall bring suit against defaulting corporations "for any franchise tax or penalty under this law," to which they have or may become subject. That is the very suit brought here in this proceeding.

The State has prosecuted this appeal upon a theory that appellant seeks to escape the tax by claiming *exemption* from a tax imposed by general law, wherefore, it is asserted, appellant must bring itself clearly within the exemption, which, it is further urged, it has not done. We do not so construe appellant's defense. Appellant does not claim that character of exemption. Its position is, simply, that when the Secretary of State forfeited its right to legally engage in business in this State, its franchise, for which the tax was levied, and its right to enforce its contracts thereunder, were thereby withdrawn and cancelled and ceased to exist, whereby the consideration for the tax failed; that the State's remedy against appellant's default lay in the forfeiture of appellant's charter,

and in the penalties provided in Arts. 7089, 7091, 7095.

Appellant lays stress upon the language "except as herein provided" at the beginning of Arts. 7084 and 7089. The exceptions contemplated relate, necessarily, to corporations expressly exempted by other Articles in the Chapter, by reason of the nature of their purposes. No provision in the Chapter, or elsewhere in the statutes, purports to exempt corporations like appellant from the tax in question.

So does appellant invoke the familiar rule that statutes imposing taxes must be strictly construed against the government, and liberally in favor of the taxpayer. But we do not think that rule can afford any comfort to appellant in this case. The relevant statutes so plainly impose the tax upon corporations in appellant's class that a strict construction thereof could not be given effect to exclude appellant from that class, and once it is in the class, a liberal construction, if needed, will be applied to effect the purpose intended.

If we understand appellant's position from the very forceful and ingenious presentation of its counsel, that position may be further elucidated to be, in effect, as follows:

The consideration for the tax is the franchise which gave appellant the right to engage in business under contracts enforceable in the courts of the State. The law provides that if the corporation shall default in the payment of any annual installment of the tax, it shall suffer the penalty of exclusion from the courts of the State to enforce its rights or obtain redress for its wrongs; shall pay a penalty of 25% of the amount of the franchise tax, and, finally, shall forfeit its charter. Appellant contends that there is no provision—certainly no clear or express provision—that it shall pay the franchise tax during the period through which it has been outlawed because of its default in such payment, and that there being no express provision requiring it to pay the tax during the suspension of its legal right to engage in the business for which it was chartered, none may be implied, under the rule stated. Now, had appellant elected to retrieve its forfeited franchise rights, it would then have been put to the payment of the franchise tax during the period of default—another penalty for

its default. But, being outlawed, as it admits it should have been, it chose rather to surrender its charter than pay the price the law had put upon its head. It had two alternatives, to comply with the law and operate securely under its protection on the one hand, or default and labor under the disabilities visited by the laws upon it for its dereliction, upon the other. It chose the latter course, went outside the protection of the law, where after a time it took its own life. It chose, not to repent and pay the price of redemption, but to remain beyond the pale. In the absence of a direct command thereto, appellant urges, it cannot be required to pay for the protection the State had thus withdrawn from it in punishment for its default. Such are the contentions of appellant, fairly stated, as we view them. For the reasons stated, however, we cannot sustain these contentions, but must overrule them.

The judgment is affirmed.