ROSS AMIGOS OIL COMPANY ET AL V. STATE OF TEXAS.

No. 7654. Decided April 3, 1940.
(138 S. W., 2d Series, 798.)

*Mann & Mann,* and *Max A. Mendlovitz,* all of Laredo, for plaintiffs in error.

The Court of Civil Appeals erred in holding that Chapter 3 of Title 122 of the Revised Civil Statutes rendered the corporation liable to pay the corporate franchise tax therein imposed after the said corporation's right to do business in the State has been forfeited by the Secretary of State. Canadian Country Club v. Johnson, 176 S. W. 835; Federal Crude Oil Co. v. Yount-Lee Oil Co., 122 Texas 21, 52 S. W. (2d) 56; Real Estate Land & Title Co. v. Dildy, 92 S. W. (2d) 318.

*Gerald C. Mann,* Attorney General, *Geo. W. Barcus* and *A. S. Rollins,* Assistants Attorney General, for defendant in error.

MR. JUSTICE SHARP delivered the opinion of the Court.

The State of Texas brought this suit in the District Court of Webb County against the Ross Amigos Oil Company, a Texas corporation, and its directors, to recover the amount of the

franchise tax which the State claimed was due for the years 1930 to 1938, inclusive. Judgment was rendered in the trial court in favor of the State for the sum of $1159.00. An appeal was taken by the defendants to the Court of Civil Appeals at San Antonio, and the judgment of the trial court was affirmed. 131 S. W. (2d) 316. A writ of error was granted.

In this opinion we shall designate the State of Texas as the State, and the Ross Amigos Oil Company as the Oil Company.

Plaintiffs in error urge two main contentions: (1) That the Court of Civil Appeals erred in holding that Chapter 3 of Title 122, Article 7084 et seq., of the Revised Civil Statutes of Texas, renders them liable to pay the corporate franchise tax imposed therein, after the Oil Company's right to do business in this State had been forfeited by the Secretary of State; and (2), that when Article 141 of the Penal Code is considered in connection with Article 7084 et seq., supra, the law evidences a clear intention to levy a franchise tax on such corporations for the privilege of doing business in this State, and that when the Secretary of State forfeited the right of the Oil Company to do business, it was no longer liable for such franchise tax during the interim for which it was not privileged to do business in this State.

The cause is submitted on an agreed statement of facts. The Ross Amigos Oil Company was incorporated in 1922 under the laws of Texas. It paid its franchise tax up to the year 1930. The Secretary of State, after proper notices, did on August 1, 1930, notify the Oil Company that its right to do business in Texas had been forfeited, because of its failure to pay the franchise tax. The Oil Company was incorporated for the purpose of establishing and maintaining an oil and gas company, with the right to acquire real and personal property and enter into drilling contracts and acquire leases. On February 2, 1938, the Oil Company was dissolved, by consent of its stockholders. At the time of its dissolution the other plaintiffs in error herein were its directors and the corporation owned a considerable amount of property. The directors of the corporation, after its dissolution, took charge of the property as trustees, and were to pay all of the corporation's debts and then divide the remainder of the property among the stockholders, as provided by law. No receiver was asked for or appointed.

The Oil Company for the period from August 2, 1930, to February 2, 1938, inclusive, owned and operated producing oil wells in this State, receiving the annual gross receipts there-

from, and reporting their entire production to the Comptroller of Public Accounts, as required by law, and filed a capital stock tax return with the Bureau of Internal Revenue as of the date of dissolution of said corporation on February 2, 1938.

This case involves the construction of Articles 7084 to 7097, inclusive, of the Revised Civil Statutes of Texas.

Article 7084 provides: "Except as herein provided, every domestic and foreign corporation heretofore or hereafter chartered or authorized to do business in Texas, shall, on or before May 1st of each year, pay in advance to the Secretary of State a franchise tax for the year following, * * *" Then follows the basis upon which the tax is calculated.

Article 7089, as amended in 1931, provides: "All corporations now required to pay an annual franchise tax shall, between January 1st and March 15th of each year, make a sworn report to the Secretary of State, on blanks furnished by that officer, showing the condition of such corporation on the last day of its proceeding fiscal year." This article also provides what the reports shall contain, and further provides: "Any corporation which shall fail or refuse to make its report shall be assessed a penalty of ten per cent (10%) of the amount of franchise tax due by such corporation, payable to the Secretary of State, together with its franchise tax."

Article 7091 in effect provides that any corporation which fails to pay such franchise tax shall thereupon become liable to a penalty of 25% of the amount of such franchise tax due by such corporation. If the amount of such tax and penalty is not paid in full on or before the first day of July thereafter, such corporation for such default shall forfeit its right to do business in this State. Such article also provides that such forfeiture shall be consummated without judicial ascertainment by the Secretary of State entering upon the margin of the record kept in his office relating to such corporation the words "right to do business forfeited" and the date of such forfeiture. Any corporation whose right to do business shall thus be forfeited shall be denied the right to sue or defend in any court of the State, except in a suit to forfeit its charter.

Article 7092 provides how the notice of such forfeiture shall be given by the Secretary of State, and the time and manner of giving such notice. It also provides that when such tax and penalty shall have been fully paid to the Secretary of State, he shall revive the right of the corporation to do business within

this State by cancelling the words "right to do business forfeited" upon his record, and by endorsing thereon the word "revived" and the date of such revival. This article further provides that if any domestic corporation whose right to do business within this State shall hereafter be forfeited under the provisions of this law, and shall fail to pay the Secretary of State on or before the first day of January next following the revival the amounts necessary to entitle it to have its right to do business revived under the provisions of this law, such failure shall constitute sufficient ground for the forfeiture of its charter by judgment of any court of competent jurisdiction.

Article 7094 describes the corporations that are exempt from the provisions of this law.

Article 7095 provides that the Attorney General shall bring suit against "any such corporation which may be or become subject to or liable for any franchise tax or penalty under this law," and for the forfeiture of the charter of such corporation.

Article 7097 provides the rule or method for calculating the franchise tax which corporations in the process of liquidation shall be required to pay.

Article 141 of the Penal Code provides that, in all cases in which the charter or right to do business of any private domestic corporation, chartered under the laws of this State, shall be forfeited, it shall be unlawful for any person, or persons, or stockholders or officers of such corporation at the time of such forfeiture, to do business under the name of such corporation; and provides penalties therefor.

■ A construction of the foregoing articles of the statutes resolves itself into one of legislative intent; which is to be determined from the language used and the purpose in view in enacting the law. When all the articles of this statute are considered together, and full effect given to the object sought to be attained therein, the conclusion is inescapable that this statute was enacted solely for the purpose of raising revenue. The clear purpose of this law is to levy a franchise tax on each and every corporation that is chartered in the State,—with certain exemptions, which are not involved here. The penalties imposed for failure to pay the franchise tax are heavy, and were evidently provided to hasten payment and to inflict a punishment on such corporations for failure to pay such tax.

■ The Oil Company could have made valid contracts, because the law does not expressly declare that contracts made by a

corporation whose right to do business has been forfeited are void. Nor does the law declare that the business transacted during the time of such forfeiture is void. It is undisputed that the Oil Company continued to do business in Texas as a chartered corporation. The only right or privilege taken away from such corporation by the forfeiture of its right to do business by the Secretary of State was its right to sue and defend in the courts of the State. Federal Crude Oil Co. v. Yount-Lee Oil Co., 122 Texas 21, 52 S. W. (2d) 56; Lyons v. Texorado Oil & Gas Co. (Tex. Civ. App., error refused), 91 S. W. (2d) 375; Real Estate Land Title & Trust Co. v. Dildy, 92 S. W. (2d) 319; Smythe Co. v. Ft. Worth, etc., Co., 105 Texas 8, 142, S. W. 1157; State Bank v. Holland, 103 Texas 266, 126 S. W. 564; 10 Tex. Jur., p. 187, Sec. 108; 37 C. J., p. 260, Sec. 138.

■ It will be noted that the Attorney General brought no suit against the Oil Company to forfeit its charter, either for failure to pay the franchise tax or upon any other ground. The failure of a corporation to pay a franchise tax does not authorize the Secretary of State to declare a forfeiture of its charter. All that the law authorizes him to do is to forfeit the right of the corporation to do business, and it shall be denied the right to use the courts of this State. The law specifically places the burden on the Attorney General to effectuate a forfeiture of the charter of a corporation, by legal proceedings brought on behalf of the State for that purpose. Fox v. Robbins (Tex. Civ. App.) 62 S. W. 815, Id., 70 S. W. 597 (error refused); Rippstein et al. v. Haynes Medina Valley Ry. Co. et al. (Tex. Civ. App.), 85 S. W. 314.

■ It is undisputed that the Oil Company owned and operated producing oil wells in this State from 1930 to February 2, 1938, when it was dissolved by consent of its stockholders. The law undoubtedly levies a franchise tax against corporations such as this, regardless of whether or not they do business. This conclusion is fortified by the provisions of Article 7095, which specifically provides that the Attorney General shall bring suit against any such corporation which may be or become subject to or liable for any franchise tax or penalty under this law. This liability for such franchise tax applies to all corporations required to pay same, regardless of the forfeiture by the Secretary of State of the right of such corporation to do business; and this liability continues so long as such corporation remains undissolved, or until its charter is forfeited by legal proceedings as required by law.

In Federal Crude Oil Co. v. Yount-Lee Oil Co., 122 Texas 21, 52 S. W. (2d) 56, in discussing the effect of Articles 7091 and 7092, this Court used the following language:

"This statute is purely a revenue measure. Under it large sums are collected for the support of the State Government. Statutes of this nature are always liberally construed so as to effectuate the chief object and purpose of their enactment. In making provision for the collection of public revenue, ordinarily time is not of the essence of the thing sought to be accomplished. The primary purpose of such a statute is to secure the payment of the taxes therein levied."

■ It is undisputed that after the forfeiture of the Oil Company's right to do business it exercised all the benefits and privileges conferred on a chartered corporation, except its right to sue and defend in the courts. It carried on its business, retained the proceeds derived therefrom, and up to the time it was finally dissolved it acted as though it had paid its franchise tax. To hold under these facts that a corporation could refuse to pay its franchise tax, and thereby defeat its obligation to pay same, would nullify the dominant purpose of this law and defeat the very purpose for which it was enacted.

For a further discussion of this class of legislation by the various courts, we cite the following decisions: In re G. H. Hammond Co., 246 Mich. 179, 224 N. W. 655; In re Detroit Properties Corporation, 254 Mich, 523, 236 N. W. 850; Michigan v. Michigan Trust Co., 286 U. S. 334, 52 Sup. Ct. 512; State v. Acacia Mutual Life Assn., 214 Ala. 628, 108 So. 756; Minneapolis, St. Paul & S. S. M. Ry. v. Oppegard, 118 N. W. 830; Bowers v. Kansas City Public Service Co., 228 Mo. 770 41 S. W. (2d) 810; People ex rel. East River Terminal Ry. Co. v. State Board of Tax Commissioners, 140 N. Y. Supp. 722; Newton Creek Towing Co. v. Law, 199 N. Y. Supp. 866, 237 N. Y. 578, 143 N. E. 749; State ex rel. Preston Mill Co. v. Howell, 67 Wash. 377, 121 Pac. 861; Knoxville & Ohio R. R. Co. v. Harris, 99 Tenn. 684, 43 S. W. 115.

We have carefully considered all of the questions raised by plaintiffs in error, and same are overruled.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered April 3, 1940.