**NEW BOSTON GENERAL HOSPITAL, INC. and James J. Naples, DPM, Inc., Appellants,**

v.

**TEXAS WORKFORCE COMMISSION and Becky Borgeson, Appellees.**

No. 06–00–00054–CV.

Court of Appeals of Texas, Texarkana.

Submitted Feb. 6, 2001.

Decided March 8, 2001.

Opinion Overruling Rehearing May 15, 2001.

M. Mark Lesher, Lesher & Murry, Ernest L. Cochran, Law Office of Ernest L. Cochran, Texarkana, G. Wayne Choate, Goode, Casseb, Jones, Riklin, Choate & Watson, PC, San Antonio, for appellant.

Deborah J. Race, Ireland, Carroll, Kelley, Tyler, for Becky Borgeson.

Anthony Aterno, Seth O. Smith, Asst. Attys. Gen., Austin, for Texas Workforce Commission.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Chief Justice CORNELIUS

New Boston General Hospital, Inc. (New Boston) and James J. Naples, DPM, Inc. (Dr. Naples) appeal from a summary judgment rendered in favor of the Texas Workforce Commission (TWC) and Ms. Becky Borgeson (Ms. Borgeson). New Boston and Dr. Naples contend that the trial court erred in granting summary judgment because the summary judgment evidence adduced before the trial court did not constitute substantial evidence, and because the

alleged underlying contract on which Ms. Borgeson sued was illegal and therefore unenforceable. We overrule both points of error and affirm the judgment.

On February 12, 1998, Ms. Borgeson filed a wage claim with the TWC alleging that her employer, Dr. Naples, had failed to compensate her for services rendered from November 24 to December 2, 1997. Additionally, Ms. Borgeson claimed that she was entitled to a bonus of $45,000.00 for enrolling various nursing, retirement, and assisted living homes to have their patients treated at Dr. Naples' clinics. In March of 1998, the Labor Law Payment Division of the TWC issued a preliminary wage determination order indicating that Dr. Naples had violated Chapter 61 of the Texas Labor Code and ordered him to pay $41,461.54 to TWC for the benefit of Ms. Borgeson. Subsequently, Dr. Naples filed a formal notice of appeal pursuant to TEX. LAB.CODE ANN. § 61.054(b) (Vernon 1996). On June 16, 1999, the TWC issued its Payday Law Decision, based largely on two telephonic conferences and a verified affidavit executed by Dr. Nicholas Bachynsky, who had acted as a representative of Dr. Naples. In the decision Mr. Douglas Carnes, a TWC hearing officer, made various findings of fact including: (1) that Ms. Borgeson was hired by Dr. Bachynsky, with Dr. Naples' approval, to implement a plan to increase business for New Boston by marketing to nursing and retirement homes, (2) that Ms. Borgeson was an employee and not an independent contractor, based on a continuing relationship, training, and methods of compensation which included fringe benefits, (3) that an agreement existed between Ms. Borgeson and Dr. Bachynsky whereby Ms. Borgeson would be paid ten percent of the revenues from homes she recruited, but that in November of 1997, the agreement was changed to provide for a flat fee of $1,000.00 per home because the former agreement was prohibited by state and federal statutes, and (4) that while Ms. Borgeson was supervised by Dr. Bachynsky, she received her wages directly from New Boston. Accordingly, Mr. Carnes modified the March 16 determination order, holding that New Boston, and not Dr. Naples, who was New Boston's president and director, was Borgeson's employer, and affirmed the prior determination as modified. On July 14, 1998, New Boston and Dr. Naples filed a petition for judicial review in the District Court of Bowie County. Although the TWC filed an original answer, Ms. Borgeson neither filed an answer nor appeared at the September 24 hearing, and a default judgment was granted against her. Ms. Borgeson alleged in a motion for new trial that she mistakenly believed her interests were to be protected by the TWC, and that her failure to appear was inadvertent and not the result of conscious indifference. The trial court accordingly set aside the default judgment against her. Thereafter, the TWC filed a motion for summary judgment, which the trial court granted. New Boston and Dr. Naples filed a motion for new trial, which the trial court denied.

On appeal New Boston and Dr. Naples contend that the trial court erred in granting summary judgment because as a matter of law the summary judgment evidence did not constitute substantial evidence to support the TWC Payday Law Decision. Judicial review of a final decision of the TWC is available pursuant to TEX. LAB. CODE ANN. § 61.062(e) (Vernon 1996); *Levelland Indep. Sch. Dist. v. Contreras*, 865 S.W.2d 474, 476 (Tex.App.—Amarillo 1993, writ denied). Specifically, Section 61.062(e) requires a trial *de novo* to determine whether substantial evidence exists to support the TWC decision. *See Mercer v. Ross*, 701 S.W.2d 830, 831 (Tex.1986); *Madisonville Consol. Indep. Sch. Dist. v.*

*Texas Employment Comm'n,* 821 S.W.2d 310, 311 (Tex.App.—Corpus Christi 1991, writ denied).

■ In *Jones v. Marsh,* the Texas Supreme Court described the substantial evidence standard of review as follows:

> [I]t is that the finding of the administrative body or agency be sustained by the court if it is reasonably supported by substantial evidence, meaning *evidence introduced in court.* It is for the court, whether trial or appellate, to determine as a *matter of law* the reasonableness of the support afforded by substantial evidence, and in making its decision of this question the court examines and takes into consideration all of the evidence.

*Jones v. Marsh,* 148 Tex. 362, 224 S.W.2d 198, 202 (1949) (emphasis added). Moreover, in the *de novo* review, the issue is whether the evidence introduced in the trial court shows facts that existed at the time the TWC order was issued that are of such a substantial nature as to reasonably support the order. *Burton v. Texas Employment Comm'n,* 743 S.W.2d 690, 692 (Tex.App.—El Paso 1987, writ denied) (quoting *Cruz v. City of San Antonio,* 424 S.W.2d 45, 47 (Tex.Civ.App.—San Antonio 1968, no writ)). The trial court is not bound by, nor does it review, the TWC's findings of fact. *Direct Communications, Inc. v. Lunsford,* 906 S.W.2d 537, 541 (Tex. App.—Dallas 1995, no writ). The trial court rules on the evidence admitted at the trial *de novo,*[1] not the evidence presented at the TWC hearing. *Id.; Mary Lee Found. v. Texas Employment Comm'n,*

817 S.W.2d 725, 727 (Tex.App.—Texarkana 1991, writ denied).

■ A decision of the TWC is presumed to be valid, and a party seeking to set aside the agency's decision has the burden to show that it was not supported by substantial evidence.[2] *Mercer v. Ross,* 701 S.W.2d at 831; *Mary Lee Found. v. Texas Employment Comm'n,* 817 S.W.2d at 727. It is for the reviewing court to decide whether the evidence is such that reasonable minds could not have reached the conclusion the administrative body must have reached in order to justify its actions. *Haas v. Texas Employment Comm'n,* 683 S.W.2d 462, 464 (Tex.App.—Dallas 1984, no writ).

■ A summary judgment is proper only when a movant establishes that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). In determining whether a material fact issue exists to preclude summary judgment, evidence favoring the nonmovant is taken as true, every reasonable inference is indulged and any doubts are resolved in the nonmovant's favor. *Sakowitz, Inc. v. Steck,* 669 S.W.2d 105, 107–08 (Tex.1984); *see also Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 477 (Tex.1995). The determination of whether the TWC's decision was supported by substantial evidence is a question of law. *Direct Communications, Inc. v. Lunsford,* 906 S.W.2d at 541. There is no restriction of the summary

---

1. In light of the lack of an objection by appellants, the findings of fact and conclusions of law compiled during the Payday Law proceeding before Mr. Carnes of the TWC were properly before the trial court, as they were attached to the appellee's motion for summary judgment.

2. The Supreme Court has held: "Although substantial evidence must be *more than a mere scintilla, it need not be a preponderance* . In fact, the evidence may be substantial and yet greatly preponderate the other way." *Olivarez v. Aluminum Corp. of Am. (Rockdale Works),* 693 S.W.2d 931, 932 (Tex.1985) (emphasis added).

judgment practice in a case tried under the substantial evidence rule. *Id.; Cruz v. City of San Antonio,* 424 S.W.2d at 47.

■ New Boston and Dr. Naples contend that the trial court erred in granting summary judgment because the TWC acted unreasonably in deciding Ms. Borgeson's wage claim. This contention is predicated on the contention that as a matter of law there was not substantial evidence to support the decision. We disagree. The TWC's motion for summary judgment included verified affidavits of Ms. Borgeson, Dr. Bachynsky, Mr. Shawn Akins, a co-worker of Ms. Borgeson's, and a tape-recorded conversation between Ms. Borgeson and Dr. Bachynsky regarding the commission agreement. These pieces of summary judgment evidence, taken together, support the existence of an employment relationship between New Boston and Ms. Borgeson, as well as a commission agreement based on the recruitment of nursing, retirement, and assisted living homes.

In their brief, New Boston and Dr. Naples contend that the alleged contract was verbal only and was made between Ms. Borgeson and Dr. Bachynsky, who was neither the president nor a director of New Boston, and that Ms. Borgeson was an independent contractor rather than an employee. But because New Boston and Dr. Naples wholly failed to present to the trial court any evidence of Ms. Borgeson's status as an independent contractor, besides Dr. Bachynsky's controverted affidavit, as urged by the TWC they may not now create an evidentiary record through their conclusory statements. Additionally, a review of the record indicates that Dr. Naples, as president and director of New Boston, through Dr. Bachynsky, played a significant role in the hiring and supervision of Ms. Borgeson throughout her employment relationship with New Boston. The record is indeed replete with evidence belying the contention that no enforceable contract existed between New Boston and Ms. Borgeson.[3]

■ New Boston and Dr. Naples also contend that if a contract did exist between New Boston and Ms. Borgeson, it would violate federal and Texas statutes and therefore be illegal and unenforceable. First, they point to 42 U.S.C.A. § 1320a–7b(b)(1) & (2) (West Supp.2000), more commonly referred to as the Medicare anti-kickback statute, which prohibits (1) any person or entity from knowingly and willfully making or accepting payment or remuneration for referring patients for federally funded medical services, and (2) the offer or payment of remuneration to induce such referrals. *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.,* 938 F.Supp. 399, 403 (S.D.Tex. 1996), *aff'd in part, vacated & remanded in part on other grounds,* 125 F.3d 899 (5th Cir.1997). Appellants also point to TEX. HEALTH & SAFETY CODE ANN. § 161.091 (Vernon 1992), which similarly prohibits the securing or solicitation of patients and the remuneration thereof.

Both of these statutes have exceptions and "safe-harbor" provisions, however, that exempt the type of marketing undertaken by Ms. Borgeson as an employee of New Boston. First, 42 U.S.C.A. § 1320a–7b(b)(3)(B) (West Supp.2000) explicitly exempts an employee and employer from Subsections (b)(1) & (2) for any amount paid during the existence of a bona fide employment relationship. *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.,* 938 F.Supp. at 403 (42

---

3. The original wage claim indicated that Dr. Naples was Ms. Borgeson's employer. Dr. Naples argues that the TWC altered Ms. Borgeson's wage claim when it changed the employer designee to New Boston.

U.S.C.A. § 1320a–7b(b)(3)(B) referred to as a statutory exception). Additionally, 42 C.F.R. § 1001.952(i) is a statutory safe-harbor provision enacted by Congress to protect both employers and employees from the type of business and payment practices in which New Boston and Ms. Borgeson engaged. *See United States ex rel. Thompson v. Columbia/HCA Health-care Corp.,* 938 F.Supp. at 403 (42 C.F.R. § 1001.952 referred to as a safe-harbor regulation). Moreover, TEX. HEALTH & SAFETY CODE ANN. § 161.091(e) & (f) also exempt the type of marketing services for the solicitation of patients in which Ms. Borgeson engaged, "provided the remuneration is set in advance, is consistent with the fair market value of the services, and is not based on the volume or value of patient referrals . . . ."

From our review of the record, it is clear that substantial evidence was adduced supporting the existence of a bona fide employment relationship between New Boston and Ms. Borgeson for the marketing to and recruitment of various nursing, retirement, and assisted living homes. The verified affidavits of Ms. Borgeson and Mr. Akins, as well as the affidavit of Dr. Bachynsky, illustrate the existence of a marketing strategy, directed by Dr. Naples, president and director of New Boston, to increase revenue by recruiting individuals at nursing, retirement, and assisted living homes as potential patients. This strategy was implemented by hiring Ms. Borgeson as a marketing consultant to recruit patients from these facilities in the hopes of acquiring contracts with a number of the facilities for various medical services. Additionally, the affidavits and recorded conversation between Dr. Bachynsky and Ms. Borgeson illustrate the specifics of the commission

agreement.[4] It appears that the employment relationship between Ms. Borgeson and New Boston was moderately successful, because a number of the facilities recruited by Ms. Borgeson ultimately entered into contracts with New Boston for various medical services. In light of the various statutory exceptions and safe-harbor provisions, and the summary judgment evidence produced by the TWC and Ms. Borgeson, we find no merit to the contention that the contract with Ms. Borgeson was void and unenforceable.

 New Boston further contends that Mr. Carnes of the TWC improperly amended Ms. Borgeson's employer designee from Dr. Naples to New Boston, and therefore New Boston was not a proper party to the Payday Law proceedings. New Boston argues that this alteration violated the rudimentary requirements of due process because it only received notice of these proceedings at their conclusion, when it was notified to deposit $41,461.54 into escrow with the TWC. However, a review of the record reflects that New Boston was virtually represented by Dr. Naples. In *Davis v. Hudgins,* the Dallas Court of Civil Appeals, discussing virtual representation, stated:

> Under [the virtual representation] doctrine, the persons who are not joined by name as parties are in a sense before the court. They have been called quasi parties, and have even been said to be parties in substance and legal effect. In all cases to which the doctrine of representation applies there must be joined as parties persons who fairly represent the interest or right involved, so that it may be tried fairly and honestly. It is sufficient if the parties before the court enable it fairly and fully to adjudicate the

---

4. The commission agreement was modified at some point during Ms. Borgeson's employ-

ment relationship so as not to run afoul of federal or state statutes.

question involved. The parties represented must have a common interest with those before the court, and consequently the parties before the court cannot act as representatives if their interests are antagonistic to those who would be represented. *Davis v. Hudgins*, 225 S.W. 73, 76 (Tex. Civ.App.—Dallas 1920, no writ). More recently the Texas Supreme Court, in *Motor Vehicle Bd. of Texas Dep't of Transp. v. El Paso Indep. Auto. Dealers Assoc., Inc.*, 1 S.W.3d 108 (Tex.1999), announced a three-prong test for virtual representation. To be virtually represented a party must be: bound by the judgment, have its privity of estate, title, or interest apparent from the record, and there must be an identity of interest between the named and unnamed parties.[5] *Id.* at 110 (quoting *Cont'l Cas. Co. v. Huizar*, 740 S.W.2d 429 (Tex.1987)).

Our review of the record indicates that New Boston met each of these prongs. Mr. Carnes, in examining the identity of Ms. Borgeson's employer, determined that she was paid exclusively by New Boston. The work in which Ms. Borgeson engaged was performed solely for the benefit of New Boston, as evinced by the fact that each of the homes she enrolled was billed through New Boston. Dr. Naples is the president and director of New Boston and had the authority to direct all of its activities. Dr. Naples appeared at the proceedings before the TWC in person and by counsel. Moreover, New Boston voluntarily appeared by counsel at the trial in the district court and participated in every aspect of those proceedings. The same counsel represented New Boston and Dr. Naples individually at all 'stages of these proceedings. Finally, as discussed earlier,

although Dr. Bachynsky primarily directed Ms. Borgeson's employment activities, he was delegated this authority by Dr. Naples, the president and director of New Boston. Accordingly, we find no merit to New Boston's contention that it was not a party to these proceedings.

For the reasons stated, we affirm the trial court's judgment.

## OPINION ON REHEARING

In their motion for rehearing, New Boston General Hospital, Inc. and Dr. James J. Naples contend that a fact issue exists as to whether the "safe harbor" provisions of the federal and state statutes apply to Becky Borgeson. We find that this point is immaterial to a proper resolution of this appeal.

Where a regulatory statute imposes a penalty for its violation but does not expressly declare that contracts in violation of its provisions are void, a contract that contravenes the provisions of the statute is not necessarily invalid. *Ross Amigos Oil Co. v. State*, 134 Tex. 626, 138 S.W.2d 798 (1940); *Tubb v. Kramer Bros. Nurseries*, 237 S.W.2d 680 (Tex.Civ.App.—Waco 1951, writ ref'd n.r.e.). And a contract in contravention of a regulatory statute is not void and unenforceable if the expressly stated consequences of violating the statute are apparently ample to insure its observance. *Borger v. Brand*, 131 Tex. 614, 118 S.W.2d 303 (1938).

Moreover, Tex. Health & Safety Code Ann. § 161.091 (Vernon 1992),[6] the statute in force when the contract in consideration here was executed, provided for penalties only against a person or corporation licensed, certified, or registered by a health

---

**5.** Of note, both New Boston and Dr. Naples were represented by the same counsel at oral argument.

**6.** *Repealed by* Act of May 10, 1999, 76th Leg., R.S., ch. 388, § 6(b)(2) Tex. Gen. Laws 1431, 2440.

care regulatory agency of this state. Thus, the statute did not apply to Borgeson, and she would not have been *in pari delicto* with New Boston and Dr. Naples. *See Am. Nat'l Ins. Co. v. Tabor,* 111 Tex. 155, 230 S.W. 397 (1921). Where the parties to the contract are not *in pari delicto,* relief may be granted to the party who is the least culpable. *See Graham v. Dean,* 144 Tex. 61, 188 S.W.2d 372 (Tex.1945).

Borgeson worked with New Boston and Dr. Naples to amend the contract so it would comply with both federal and state law. Even if the contract could be considered illegal, it would be unconscionable to allow New Boston to set up its own illegal conduct to defeat its obligation to Borgeson, who was not in violation of the law.

The motion for rehearing is overruled.

