**Motion for Rehearing Overruled; Opinion of January 8, 2013 Withdrawn; Reversed and Remanded and Substitute Opinion filed February 14, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00016-CV

---

### INTERNATIONAL RISK CONTROL, LLC, Appellant

### V.

### SEASCAPE OWNERS ASSOCIATION, INC., Appellee

---

**On Appeal from the 10th District Court
Galveston County, Texas
Trial Court Cause No. 10CV4172**

---

## S U B S T I T U T E   O P I N I O N

We issued an opinion in this case on January 8, 2013, reversing the trial court's summary judgment and remanding for additional proceedings. Appellee subsequently filed a motion for rehearing. Without changing our previous disposition, we deny the motion for rehearing, withdraw our earlier opinion, and issue this substitute opinion in its place.

## BACKGROUND

Seascape Owners Association, Inc. ("Seascape") is the managing corporation of a large condominium complex on Galveston Island. In September 2008, following the torrent of Hurricane Ike, many units on the property sustained extensive damage from water and wind. Seascape tried to assess the damage in the aftermath of the storm and collect the sums that it believed were due under its various insurance policies. When Seascape encountered difficulties in the collection process, it engaged the services of International Risk Control, LLC ("IRC"), a firm of licensed public insurance adjusters. The parties executed a written contract, providing for IRC's assistance in the preparation and presentation of Seascape's multiple insurance claims. In return for these services, Seascape agreed to pay IRC an eight percent commission on any amounts received or collected in settlement.

Pursuant to their agreement, IRC assessed the damaged properties, estimated the costs of repairs, and presented several insurance claims on Seascape's behalf. The claims were only partially paid by Seascape's carrier, the Texas Windstorm Insurance Association ("TWIA"). Of the amounts that were received, Seascape timely paid IRC its bargained-for commission. Seascape's remaining share was still too low, however, for it to cover the projected costs of reconstruction. Seascape decided that more claims needed to be pursued, so it retained a local law firm in the hopes of maximizing any additional recovery.

Seascape's new legal counsel began by reviewing IRC's files, including the estimates and claims that were submitted to TWIA. Counsel determined that IRC's work product was "rife with errors and improper calculations." Having decided that IRC's assistance would be "inappropriate and unhelpful in the litigation effort going forward," counsel informed IRC that its relationship with Seascape had been

terminated. IRC was also advised that all monies owed to it had been paid and that IRC would receive no further compensation.

After severing ties with IRC, Seascape filed an original petition against TWIA, asserting numerous causes of action, including fraud, breach of contract, and violations of the DTPA and Texas Insurance Code. TWIA agreed to settle the dispute outside of court for a substantial sum of money. Believing that the settlement was achieved as a result of its own work product, IRC demanded its fair share of the proceeds. IRC addressed a letter to TWIA requesting to be named as an additional payee on any amounts tendered in payment of Seascape's insurance claims. IRC also threatened to hold TWIA liable if it failed to include IRC on any payments to Seascape.

Hoping to end this dispute, Seascape filed an original petition against IRC, seeking declaratory relief that IRC was not entitled to any additional compensation under the contract. IRC filed a counterclaim, asserting damages for breach of contract. Seascape moved for summary judgment, arguing on three separate grounds that the contract was unenforceable because it failed to comply with statutory requirements, because it illegally provided for the unauthorized practice of law, and because it violated public policy. Seascape also argued that IRC was not entitled to any share of the settlement proceeds because, by law, the scope of IRC's commission could not extend to the types of claims covered by the settlement.

The trial court granted summary judgment in Seascape's favor. In its final modified order, the court concluded that the contract between the parties was unenforceable, agreeing with the first and third bases of Seascape's motion, but expressing no opinion on the contract's illegality. The court ordered that IRC take nothing on its counterclaims, concluding that the settlement proceeds did not

constitute a "claim" for which it could legally recover. The court also ordered IRC to pay Seascape reasonable attorney's fees. IRC timely filed an appeal, challenging every basis for summary judgment that was argued in Seascape's motion, including the award of attorney's fees.

## SUMMARY JUDGMENT

Our standard of review is well-established. We review a trial court's summary judgment de novo. *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 644 (Tex. 2009) (per curiam); *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007). With a traditional motion for summary judgment, the movant has the burden of showing that there is no genuine issue of material fact and that she is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). The nonmovant has no burden to respond to a traditional motion for summary judgment unless the movant conclusively establishes each element of her cause of action or defense as a matter of law. *Rhône-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222–23 (Tex. 1999).

With these principles in mind, we now turn to the theories that Seascape presented below.

## A.    Statutory Noncompliance

Seascape's first argument is that the contract is unenforceable because it fails to comply with title 28, section 19.708 of the Texas Administrative Code. Section 19.708 is a regulatory provision, implemented through the rule-making

authority in section 4102.004 of the Texas Insurance Code. The regulation sets forth specific requirements that must be complied with in contracts executed by public insurance adjusters. The requirements include statutory notices that must be printed on each contract, a statement explaining the method for calculating the adjuster's compensation, and, as relevant to this appeal, a condition that the contract contains "the name, address, and license number of the public insurance adjuster negotiating the contract." 28 Tex. Admin. Code § 19.708(b)(1).

The contract here was negotiated by Barry McGonigal, the president of IRC. McGonigal represented that he was a public insurance adjuster licensed in the state of Texas. The contract denotes his name and business address, but it does not list his license number, as required by the regulations. Seascape contends that, without the license number, the contract is invalid and unenforceable.

Seascape has not cited to any direct authority for its proposition. No case law was provided in its motion for summary judgment, and in its appellate brief, Seascape has only discussed authority stating that a court must give effect to the plain language of a statute. This authority merely provides a rule of construction, however. It offers little guidance when deciding the enforceability of a contract.

We are guided instead by the rule described in *American National Insurance Co. v. Tabor*, 111 Tex. 155, 23 S.W. 397 (1921). In that case, the supreme court held that, unless a contract is declared by law to be void or unenforceable, a court should not refuse to enforce a contract simply because it is in contravention of a statute. *See id.* at 160, 23 S.W. at 399; *accord Borger v. Brand*, 131 Tex. 614, 619, 118 S.W.2d 303, 306 (1938); *Davis v. Hendrick Autoguard, Inc.*, 294 S.W.3d 835, 840 (Tex. App.—Dallas 2009, no pet.); *New Boston Gen. Hosp., Inc. v. Tex. Workforce Comm'n*, 47 S.W.3d 34, 40 (Tex. App.—Texarkana 2001, no pet.). The court explained that if the legislature has expressly provided that other

5

consequences may arise from violation of the statute, a reviewing court should reasonably infer that those consequences were adjudged to be adequate to secure the statute's observance, and that only those remedies should be applied. *Tabor*, 111 Tex. at 160, 23 S.W. at 399.

Following *Tabor*, we note first that there is no legal provision, either statutory or regulatory, declaring a contract void or unenforceable because the contract fails to adhere to the requirements of Section 19.708. This does not mean, however, that the legislature created no framework at all for ensuring that its laws are respected. Under the Insurance Code's subchapter for enforcement, the legislature provided that an agent's license may be suspended or revoked whenever there is "a violation of this chapter or of any rule adopted by the commissioner under this chapter." Tex. Ins. Code § 4102.201(a)(1). The legislature also created an alternative in lieu of suspension or revocation, providing that an agent who contravenes a rule or regulation may be assessed "an administrative penalty in an amount not to exceed $2,000 per violation if the commissioner determines that that action better serves the purposes of this chapter." *Id.* § 4102.204. Where, as here, a contract fails to strictly comply with the regulations, we must assume that the legislature intended for these types of remedies to be applied, rather than to take the drastic step of invalidating the contract as a whole. *See Tabor*, 131 Tex. at 160, 23 S.W. at 399.

The correctness of our approach is confirmed by Section 4102.207. Under that provision, the insured has an option to void a contract if the contract was negotiated by a public insurance adjuster who did not hold a license or certificate at the time of execution. *See* Tex. Ins. Code § 4102.207 ("Any contract for services regulated by this chapter that is entered into by an insured with a person who is in violation of Section 4102.051 may be voided at the option of the insured."); *see*

*also id.* § 4102.051 (providing that a person may not act as a public insurance adjuster without the required license or certificate). The legislature did not prescribe any other circumstance in which a contract may be avoided. The legislature could have extended this extreme remedy to situations where an adjuster fails to strictly follow the dictates of Section 19.708. We must presume that its failure to do so was deliberate. *See PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship,* 146 S.W.3d 79, 84 (Tex. 2004) ("When the Legislature includes a right or remedy in one part of a code but omits it in another, that may be precisely what the Legislature intended.").

Seascape has not argued that its contract should be avoided because McGonigal was not licensed. Indeed, in its own motion for summary judgment, Seascape acknowledged that "McGonigal is a licensed Public Adjuster under Texas Insurance Code § 4102." The summary judgment evidence also includes an affidavit from McGonigal, in which he attests that he personally provided his license number to the representatives of Seascape through its board of directors.

Seascape's effort to void its contract does not comport with our precedent. Though the contract may be in contravention of the regulations, its technical deficiency is one that should be addressed administratively, rather than by avoidance. Seascape has not shown its entitlement to judgment as a matter of law on the basis of regulatory noncompliance.

## B.    Illegality and Public Policy

The trial court did not address Seascape's argument regarding the legality of the contract, but because the argument is so closely tied to Seascape's contention that the contract violates public policy, we consider them both together. Seascape argued in its motion that the contract was illegal, and therefore unenforceable, because its performance required IRC to engage in the unauthorized practice of

7

law, which is prohibited by both statute and regulation. *See* Tex. Ins. Code § 4102.156; 28 Tex. Admin. Code § 19.713(b)(7). Continuing with that premise, Seascape argued that the contract was unenforceable as against public policy because it was illegal.

The legislature has defined the "practice of law" to mean "the preparation of a pleading or other document incident to an action or special proceeding or the management of the action or proceeding on behalf of a client before a judge in court as well as a service rendered out of court." *See* Tex. Gov't Code § 81.101(a). This definition is not exclusive though, and courts may determine whether a person has engaged in the practice of law on a case-by-case basis. *See id.* § 81.101(b); *Unauthorized Practice Comm. v. Cortez*, 692 S.W.2d 47, 50–51 (Tex. 1985). In *Brown v. Unauthorized Practice of Law Committee*, the court of appeals enumerated various activities as constituting the practice of law. 742 S.W.2d 34, 42 (Tex. App.—Dallas 1987, writ denied). Seascape seizes on the following example mentioned in that case: "Entering into contracts with persons to represent them in their personal injury and/or property damage matters on a contingent fee together with an attempted assignment of a portion of the person's cause of action . . . ." *Id.*

Seascape contends that this example applies because the contract assigned IRC an eight percent commission on any amount received from Seascape's insurance claims. But a fee arrangement is common to many adjuster contracts, and even contemplated by statute. *See* Tex. Ins. Code § 4102.104; 28 Tex. Admin. Code § 19.708(b)(11). We disagree that this basis alone is sufficient to show as a matter of law that a contract requires a person to engage in the practice of law. We also disagree that the example from *Brown* is analogous to this case: the contract

8

here neither implicates the use of legal skill or knowledge, nor requires IRC "to represent" Seascape in a "cause of action" or other sort of legal capacity.

Seascape has also suggested that the contract is illegal on its face because its performance required IRC to engage in the unauthorized practice of law. Based on a plain reading of the contract, we cannot say that it does. The contract is short, only two pages in length, and worded simply. In addition to several boilerplate provisions, it consists of just the following clauses:

> Seascape Condominium Association [sic] (hereinafter "insured") hereby engages International Risk Control, LLC (hereinafter "IRC") to assist with the preparation and presentation of their insurance claims arising from loss and damages occurring on or about:
>
> September 13th and arising from Hurricane Ike (hereinafter "Claim").
>
> Insured agrees to pay IRC for its claim services and hereby assigns eight (8%) percent of the amount received for Claim. The amount of IRC fee to insured can never exceed the eight percent of the amount of the Claim settlement.

The contract essentially contemplates that IRC would provide estimates of the property damage and present the necessary paperwork and data to Seascape's insurance company. This court has previously held that such activities do not constitute the practice of law. *See Unauthorized Practice of Law Comm. v. Jansen*, 816 S.W.2d 813, 816 (Tex. App.—Houston [14th Dist.] 1991, writ denied). As we explained in *Jansen*, these procedures are required in every adjuster contract before the insured can collect on an insurance policy. *Id.* IRC could not have engaged in the unauthorized practice of law by agreeing to perform the very duties that are endorsed by the Texas Insurance Code. *See, e.g.*, Tex. Ins. Code § 4102.001(3) (defining a public insurance adjuster as a person who "acts on behalf of an insured in negotiating for or effecting the settlement of a claim or claims for loss or damage under any policy of insurance covering real or personal property").

9

Seascape also observes that even if a contract is not illegal on its face, it may still be unenforceable if facts showing its illegality are presented to the trial court. *See Lewis v. Davis*, 145 Tex. 468, 472, 199 S.W.2d 146, 148–49 (1947) ("A contract to do a thing which cannot be performed without a violation of the law is void. But where the illegality does not appear on the face of the contract it will not be held void unless the facts showing its illegality are before the court." (citations omitted)); *Gupta v. E. Idaho Tumor Inst., Inc.*, 140 S.W.3d 747, 752 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). Seascape then argues that summary judgment was appropriate because the trial court was presented with evidence that conclusively proves the contract's illegality. In particular, Seascape cites to evidence that "IRC and McGonigal sent demand letters to TWIA, 'plugged in damage figures', advised Seascape of the types of damages it was entitled to under the law, and gave TWIA representatives evaluations of Seascape's claim."

IRC disputed that any of these activities was illegal. In his affidavit, McGonigal attested that he was not a lawyer and that all of the advice he gave was based solely on his skill and experience as a public insurance adjuster. McGonigal also attested that "[a]ny demand letters sent by Seascape [were] the product of past and present attorney involvement, and are activities in which IRC does not engage." This evidence raises a fact issue. Accordingly, we cannot conclude as a matter of law that the contract was illegal, against public policy, or otherwise unenforceable.

## C.     Not a Claim

Seascape's final argument is that IRC is barred as a matter of law from receiving any share of the settlement proceeds. Seascape essentially contends that IRC is limited in the types of "claims" from which it can recover, and the settlement is not one of them.

10

Seascape cites to Section 4102.101, a provision generally describing the types of claims that may be reviewed by an agent. These claims include claims "for fire and allied coverages, burglary, flood, and all other property claims, both real and personal, including loss of income." *Id.* § 4102.101(a). Seascape observes that these claims are fundamentally different from the types of claims involved in its settlement, which included legal causes of action such as breach of contract and violations under the DTPA. "By demanding lawsuit settlement proceeds," Seascape contends, "IRC extends its claim past simply the 'claim' it is entitled to assist with under Tex. Ins. Code § 4102 to Seascape's entire realm of legal causes of action against TWIA."

To prevail on this argument that IRC was not entitled to any share of the settlement proceeds, Seascape had to establish as a matter of law that the proceeds exclusively represented damages from its legal causes of action. Seascape has not satisfied this burden.

Attached to Seascape's motion for summary judgment is the final settlement agreement negotiated between Seascape and TWIA. The agreement makes clear that the settlement sum represents a release of both Seascape's insurance claims and its legal causes of action. The agreement recites extensive facts about Hurricane Ike and the ensuing efforts by Seascape to collect on its insurance policy. It also reflects that policy disputes arose, and that Seascape pursued multiple causes of action when its claim was not paid. TWIA agreed to pay the settlement sum not because it was admitting its liability—it continued to deny liability, in fact—but "to avoid further costs and risks associated with continued litigation." The agreement plainly states that the sum is being paid "in full and final settlement of *all claims* and causes of action" (emphasis added). Seascape's insurance claims are necessarily included in that release.

11

Whether IRC is entitled to a share of the settlement proceeds is a factual determination we need not consider here. We merely decide that Seascape has not carried its burden of showing, as a matter of law, that IRC is precluded from any sort of recovery.

## CONCLUSION

After reviewing the movant's motion for summary judgment, we conclude that none of the grounds presented is meritorious. We therefore reverse the trial court's summary judgment. In light of this disposition, we do not address the issue pertaining to attorney's fees. *See* Tex. R. App. P. 47.1. The cause is remanded for additional proceedings consistent with this opinion.


/s/    Adele Hedges
          Chief Justice

Panel consists of Chief Justice Hedges and Justices Brown and Busby.