**Affirmed as Modified and Opinion filed March 4, 2014.**



In The

# Fourteenth Court of Appeals

---

**NO. 14-12-01015-CV**
**NO. 14-12-01044-CV**

---

## CHARLES KENNEBREW, SR. AND ELITE PROTECTIVE SERVICES, LLC, Appellants/Cross-Appellees

### V.

## MICHAEL R. HARRIS, Appellee/Cross-Appellant

---

**On Appeal from the 125th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2010-09593**

---

## O P I N I O N

In this appeal, we consider the claims of a withdrawing member of a limited-liability company against the company and its remaining member. The withdrawing member sued for the value of his membership interest and to recover funds he advanced on the company's behalf. After a nonjury trial, the trial court rescinded the parties' written agreement and ordered the withdrawing member's

capital contribution returned, but determined that the failure to repay the funds advanced to the company breached an oral loan agreement. All of the parties have appealed.

We conclude that the trial court erred in (a) finding that the parties had an oral agreement, (b) rescinding and failing to enforce the parties' written agreement, and (c) holding the company's remaining member jointly and severally liable for the judgment. We accordingly modify the judgment to hold the company solely liable to the withdrawing member for the value of his membership interest, repayment of funds he advanced for the company's benefit, attorney's fees, costs, and post-judgment interest. We affirm the judgment as modified.

## I. FACTUAL AND PROCEDURAL HISTORY

When Charles Kennebrew Sr. founded private security company Elite Protective Services, LLC, he signed a Company Agreement showing him to be the sole manager and member. In March 2009, Kennebrew and Michael Harris executed a Management Agreement under which Harris obtained a forty-percent interest in the company in exchange for his promise to make an initial capital contribution of $10,000.00. The parties further agreed that Kennebrew would be Elite's president and chief executive manager, and Harris would be the company's chief executive of sales.

The business relationship lasted less than a year. Among other things, Harris was dissatisfied with Kennebrew's financial reporting. As the company's manager, Kennebrew was required to provide Harris with monthly accounting reports reflecting Elite's income and expenses, but he failed to do so. Elite also failed to reimburse Harris for payments he made on Elite's behalf. Under the terms of the Management Agreement, any money that a member loaned to the company or advanced on its behalf was not to be treated as a capital contribution,

2

but was a debt of the company. Harris loaned Elite money to meet its payroll obligations and paid for goods and services for Elite's use, and although Elite repaid Harris for the money that he loaned to the company directly, it did not repay him for all of the amounts that he expended on Elite's behalf.

Kennebrew also was unhappy with the relationship. He maintains that Harris was required to become licensed or registered under the Private Security Act. When they entered the Management Agreement, Kennebrew knew that Harris had no such license or registration and did not intend to immediately apply for it, but Kennebrew asserts that Harris verbally agreed to apply at a later time. It is undisputed, however, that Harris never did so.

In January 2010, Harris notified Kennebrew in writing of his intent to withdraw from the company, and Elite acknowledged its acceptance of Harris's withdrawal a few days later. Less than two weeks after his withdrawal was accepted, Harris sued Kennebrew and Elite. In his live pleading at the time of trial, Harris asserted a claim for breach of the statutory duty to pay a withdrawing member of a limited-liability company the fair value of his membership interest. *See* TEX. BUS. ORGS. CODE ANN. § 101.205 (West 2012). He also asserted claims of shareholder oppression and breach of contract. In the alternative to his contract claims, Harris sought to recover under theories of quantum meruit or unjust enrichment. Kennebrew and Elite pleaded the affirmative defense of failure of conditions precedent; Kennebrew additionally asserted that he was not liable in the capacity in which he was sued. Kennebrew and Elite asserted counterclaims for negligent misrepresentation and breach of contract, and asked the trial court to declare that the Management Agreement is unenforceable.

By the agreement of the parties, a court-appointed accountant reviewed Elite's records and determined the value of Elite's assets, liabilities, and member

equity. The accountant also determined the amount of each member's contributed capital, the additional amounts that Harris expended on the company, and the amount that had been repaid. According to the accountant, Harris put $45,396.00 into the company, and had been repaid $23,100.00, so that the total of Harris's loans and capital contributions was $22,296.00. The accountant further determined that of this amount, $10,000.00 was a capital contribution; thus, if the Management Agreement's loan provisions are applied to the accountant's calculations, the remaining $12,296.00 would be considered loans to Harris. Finally, the accountant found that the total of the members' equity (determined by subtracting the company's total liabilities from its total assets) was $112,122.00. Harris's evidence at trial differed from the accountant's in only one respect: he produced evidence that he had been repaid only $16,100.00, leaving an outstanding loan balance of $19,295.95—an amount that is $7,000.00 less than the outstanding loan amount using the accountant's figures. Kennebrew's only controverting evidence about these amounts was his testimony that a $7,000.00 cashier's check from Harris was returned for insufficient funds.

After a one-day nonjury trial, the trial court announced judgment rescinding the written Management Agreement, concluding that there was an oral loan agreement between the parties, and holding Kennebrew and Elite jointly and severally liable to Harris for $29,295.95 in damages and $50,023.00 in attorney's fees, together with costs and post-judgment interest. The trial court held that Kennebrew and Elite were not entitled to recover on their counterclaims.

As requested by Kennebrew and Elite, the trial court issued findings of fact and conclusions of law; none of the parties requested additional findings. The trial court's factual findings show that it resolved the conflicting testimony about the amounts that Harris had paid or received, and found that, as Harris testified, he had

4

not been repaid for $19,295.29 that he expended on Elite's behalf. The trial court found that Kennebrew and Elite's failure to repay this amount breached an oral loan agreement; thus, the trial court awarded Harris this sum for the breach. The trial court also found that when Harris withdrew from Elite, his forty-percent interest in the company had a value of $44,849.00. Because the trial court rescinded the Management Agreement, it did not include this amount in the damage award, but instead ordered Harris's original $10,000.00 capital contribution returned.

Both sides appealed.

## II. ISSUES PRESENTED

In their first issue, Kennebrew and Elite contend that the trial court erred in ruling that an oral agreement existed between the parties. They argue in their second issue that the trial court erred in awarding Harris attorney's fees because after the Management Agreement was rescinded, there was no written contract to support the award. In their third issue, they argue that the evidence is legally and factually insufficient to support the imposition of liability against Kennebrew in his individual capacity. In his cross-appeal, Harris contends that the trial court erred in rescinding the Management Agreement and in failing to award him the undisputed value of his interest in Elite.

## III. STANDARD OF REVIEW

In an appeal from the judgment rendered after a non-jury trial, we review the trial court's findings using the same standards of review that apply to a jury's verdict. *MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 663 n.3 (Tex. 2009) (citing *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994)). To analyze the legal sufficiency of the evidence supporting a finding, we review the

5

record in the light most favorable to the factual findings, crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). Evidence is legally sufficient if it "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). We will conclude that the evidence is legally insufficient to support the finding only if (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810. On the other hand, a factfinder "may not simply speculate that a particular inference arises from the evidence." *Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 228 (Tex. 2011). If the evidence does no more than give rise to "mere surmise or suspicion," then it is legally insufficient. *Id.*

We review a trial court's conclusions of law de novo to determine if the trial court drew the correct legal conclusions from the facts. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

### IV. ANALYSIS

A.    **The evidence is legally insufficient to support the trial court's finding that there was an oral loan agreement between the parties**.

In their first issue, Kennebrew and Elite argue that "it was clear from the agreement and the facts in this case that the parties' intent [concerning Harris's loans to Elite] was based solely under the language of the written agreement" and that Harris "failed to show that there was an agreement outside that which was prescribed under the written agreement." We agree.

6

We have found no evidence in the record that there was an oral loan agreement between the parties. Harris instead testified at trial that specific provisions in the written Management Agreement authorized him to loan money to Elite or to advance funds on its behalf, and to be reimbursed for doing so. In his response to this issue on appeal, Harris continues to rely on specific provisions of the written Management Agreement and the Company Agreement as support for his breach-of-contract claim, and does not contend there is any evidence supporting the trial court's finding that there was an oral loan agreement between the parties. We therefore sustain this issue.

Our conclusion that there is no oral loan agreement does not resolve the question of whether Harris is entitled to recover the $19,295.29 that the trial court found was owed to Harris as repayment for funds he expended on goods and services used by Elite. Harris testified at trial and argues on appeal that the written Management Agreement authorized him to advance these funds and requires that the money be repaid. In Harris's cross-appeal, he further contends that the trial court erred in rescinding the Management Agreement rather than enforcing it. We therefore address the matters raised in Harris's cross-appeal before reaching Kennebrew and Elite's remaining issues.

## B.     The trial court erred in rescinding the Management Agreement.

Harris contends that the trial court erred in rescinding rather than enforcing the Management Agreement because (1) rescission was not mentioned in Kennebrew and Elite's live pleading, but instead was first raised in closing argument over Harris's objection; (2) Kennebrew and Elite are not entitled to any relief because they did not prevail in their counterclaims; and (3) Kennebrew and Elite did not prove that they met the preconditions for rescission. We need not address Harris's first argument, because even if a request for rescission were

7

adequately raised in the pleadings, we conclude that, as a matter of law, Kennebrew and Elite would not be entitled to such relief because they did not prevail on a counterclaim, and there is no evidence that they satisfied all of the conditions for rescission.

### 1. *Elite did not prevail on any of its counterclaims.*[1]

As the Texas Supreme Court has explained, "[r]escission is merely the 'common, shorthand name' for the composite remedy of rescission and restitution." *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 825 (Tex. 2012) (quoting RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 54 cmt. a (2011)). It is "generally used as a substitute for monetary damages when such damages would not be adequate." *City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 732 (Tex. App.—Fort Worth 2008, pet. dism'd). "A party seeking rescission and restitution must first establish a substantive right to avoidance of the transaction in question." RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 54 cmt. a.

Because rescission is a remedy, it is available only if the other party to the contract has committed some wrong. *See Nelson v. Regions Mortg., Inc.*, 170 S.W.3d 858, 863 (Tex. App.—Dallas 2005, no pet.) ("Rescission is an equitable remedy that is available in some circumstances to a claimant that has been injured *by such violations* as breach of contract or fraud.") (emphasis added); BLACK'S LAW DICTIONARY 1294 (6th ed. 1990) (defining "remedy" as "[t]he rights given to a party by law or by contract which that party may exercise *upon a default* by the

---

[1] Although the trial court drew no distinctions between the rights and obligations of Kennebrew and Elite and they present all of their arguments jointly, Harris's contractual obligations were to the company, not to Kennebrew. As can be seen from our discussion of joint and several liability, *infra,* the reverse is also true: the contractual obligations on which Harris's recovery is based are Elite's obligations, not Kennebrew's. To prevent confusion, we speak of Kennebrew and Elite's claims concerning the contract as if they were asserted solely by Elite.

other contracting party, *or upon the commission of a wrong* (a tort) by another party") (emphasis added). Thus, for rescission to be appropriate, the party requesting it must first prevail on a claim for which rescission is an available remedy.

Here, Elite maintains that it is entitled to rescission as a remedy for Harris's breach of contract, but the trial court is required to render judgment in accordance with its findings, all of which favored Harris. *See* TEX. R. CIV. P. 299 ("When findings of fact are filed by the trial court they shall form the basis of the judgment upon all grounds of recovery and of defense embraced therein."); TEX. R. CIV. P. 300 ("Where . . . the conclusions of fact found by the judge are separately stated the court shall render judgment thereon unless set aside or a new trial is granted . . . ."). The trial court's findings of fact establish that Elite did not prevail on its contract claim or on any other cause of action. Although the trial court stated in a conclusion of law that "[t]he Agreement should be rescinded," that conclusion is unsupported by any express factual findings in Elite's favor. And because there are no findings in Elite's favor on any element of its causes of action, we cannot simply presume that the trial court made the omitted findings of fact in manner that supports Elite's request for rescission. *Cf.* TEX. R. CIV. P. 299 (providing that if the trial court makes favorable findings on "one or more elements" of a claim or defense and omits other elements, we will presume that the trial court made the omitted findings in support of the judgment); *Leonard v. Eskew*, 731 S.W.2d 124, 132 (Tex. App.—Austin 1987, writ ref'd n.r.e.) (presuming that the trial court found the omitted elements of the claim on which the appellees' request for rescission was based because rescission was expressly mentioned in the judgment and the trial court's factual findings "establish[ed] at least the *one essential element*" of the cause of action) (emphasis in original).

9

## 2. *Elite also offered no evidence that it treated the contract as rescinded.*

Even if we could imply that Elite prevailed on its breach-of-contract counterclaim, Elite failed to establish that it satisfied all of the preconditions for rescission. Under the common law, one who seeks to rescind a contract must give timely notice to the other party that the contract is being rescinded and must "either return or offer to return the property he has received and the value of any benefit he may have derived from its possession." *Cruz*, 364 S.W.3d at 824; *see also Carrow v. Bayliner Marine Corp.*, 781 S.W.2d 691, 696 (Tex. App.—Austin 1989, no writ) (explaining that one who continues to use the other party's property after learning of the grounds for rescission loses any right to that remedy); *David McDavid Pontiac, Inc. v. Nix*, 681 S.W.2d 831, 836 (Tex. App.—Dallas 1984, writ ref'd n.r.e.) (holding that the appellee was not entitled to rescission because he failed to meet his burden to show that he offered to tender the value of the benefits received from using the appellant's property). The uncontroverted evidence establishes that Elite (a) never notified Harris that the contract was being rescinded, (b) neither returned nor offered to return Harris's capital contribution and the money that he loaned to the company, and (c) never offered to pay Harris interest representing the value of the benefit derived from the use of Harris's money.

For this additional reason, the evidence is legally insufficient to support the equitable remedy of rescission.

## C. The Management Agreement is enforceable.

Elite argues that rescission nevertheless is appropriate because the written contract is unenforceable, and rescission would return the parties to the status quo

before they entered the agreement.  The determination of whether an agreement is legally enforceable is a question of law.  *Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W.3d 21, 24 (Tex. App.—Houston [14th Dist.] 2005, no pet.).  We review questions of law de novo.  *Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012).

According to Elite, the Management Agreement never became effective because Harris failed to comply with the provision that "[e]ach manage [sic] member hereby agrees to execute all such agreements, certificates, tax statements, tax returns and other documents as may be required by law to effectuate the provisions contained herein."  Elite contends that Harris was required to register with the Texas Department of Public Safety-Private Security Bureau as provided in section 1702.221 of the Private Security Act.  *See* TEX. OCC. CODE ANN. § 1702.221 (West 2012).  Harris did not register as described in the Act because he maintains that its provisions do not apply to him.

We need not decide whether Harris's membership in Elite and his work on Elite's behalf made him subject to the Private Security Act, because even if he were required to register, his failure to do so did not render the Management Agreement unenforceable.  "[A] contract in contravention of a regulatory statute is not void and unenforceable if the expressly stated consequences of violating the statute are apparently ample to [e]nsure its observance."  *New Bos. Gen. Hosp., Inc. v. Tex. Workforce Comm'n*, 47 S.W.3d 34, 40 (Tex. App.—Texarkana 2001, no pet.) (op. on reh'g); *accord, Chubb Lloyds Ins. Co. of Tex. v. Andrew's Restoration, Inc.*, 323 S.W.3d 564, 577–78 (Tex. App.—Dallas 2010), *aff'd in part, rev'd in part on other grounds sub nom. Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817 (Tex. 2012).  "If the legislature has expressly provided that other consequences may arise from violation of the statute, a reviewing court should

11

reasonably infer that those consequences were adjudged to be adequate to secure the statute's observance, and that only those remedies should be applied." *Int'l Risk Control, LLC v. Seascape Owners Ass'n, Inc.*, 395 S.W.3d 821, 824 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (sub. op.) (citing *Am. Nat'l Ins. Co. v. Tabor*, 111 Tex. 155, 160, 230 S.W. 397, 399 (1921)).

Elite does not contend that the legislature expressly provided that a contract with a person who failed to register as required under the Private Security Act is void or unenforceable. And in fact, the legislature has provided other means of encouraging compliance with the registration statute. Under Section 1702.386 of the Texas Occupations Code, it is a misdemeanor to "contract[] with or employ[] a person who is required to hold a license, registration, endorsement, or commission under [the Private Security Act] knowing that the person does not hold the required license, registration, endorsement, or commission . . . ." TEX. OCC. CODE ANN. § 1702.386 (West 2012). Moreover, both the unlicensed person and the party who knowingly contracts with him may be assessed a $10,000 civil penalty. *Id.* § 1702.381. We may reasonably infer that the legislature considered these criminal and civil penalties sufficient to deter violation of the registration requirement. *See Ross Amigos Oil Co. v. State*, 134 Tex. 626, 630–31, 138 S.W.2d 798, 800 (1940) (holding that the contracts of a company that failed to pay a required franchise tax were not void, and explaining that rather than declaring such contracts void, the legislature instead imposed heavy penalties for a company's failure to pay); *Am. Nat'l Ins. Co.*, 111 Tex. at 160–61, 230 S.W. at 399 (holding that a life-insurance contract issued in violation of a non-discrimination statute was not void even though the statutory violation was a misdemeanor); *Int'l Risk Control, LLC*, 395 S.W.3d at 824–25 (holding that a contract entered in violation of a regulation was not unenforceable even though the violation could be punished

with a monetary penalty and suspension or revocation of an agent's license). We accordingly conclude that even if Harris were required to register in accordance with the Private Security Act and failed to do so, the Management Agreement remained enforceable.

**D.     Harris was entitled to the value of his share of the company rather than simply the return of his capital contribution.**

Harris argues that even though the trial court erred in rescinding the Management Agreement (and thus, in ordering the return of his capital contribution), the trial court's remaining findings of fact establish his entitlement to a different damage award: recovery of the value of his share of the company as provided by the Management Agreement. We agree. *See Blair v. Fletcher*, 849 S.W.2d 344, 345 (Tex. 1993) (per curiam) ("[W]hen error is preserved and jurisdiction is proper, a court of appeals must render a decision on the merits."); *In re Estate of Tyner*, 292 S.W.3d 179, 183 (Tex. App.—Tyler 2009, no pet.) (noting that an appellate court is authorized to modify an incorrect judgment when the necessary information is available for it to do so (citing TEX. R. APP. P. 43.2(b))); *City of Laredo v. R. Vela Exxon, Inc.*, 966 S.W.2d 673, 678 (Tex. App.—San Antonio 1998, pet. denied) (explaining that where a conflict exists between a trial court's judgment and its subsequently issued findings of fact and conclusions of law, the findings of fact control).

By statute, a member who validly exercises a contractual right of withdrawal "is entitled to receive, within a reasonable time after the date of withdrawal, the fair value of the member's interest in the company as determined as of the date of withdrawal." TEX. BUS. ORGS. CODE ANN. § 101.205. Here, both the original Company Agreement and the later Management Agreement expressly permit

members to withdraw.[2]  The trial court found that Harris notified Kennebrew and Elite of his desire to withdraw on January 21, 2010, and Elite acknowledged acceptance of Harris's withdrawal on February 1, 2010.  The parties do not challenge these findings, which show that Harris validly exercised his contractual right to withdraw.

The parties were unable to agree on the amount that Harris was owed, and Harris sued for repayment of his loans to the company, together with the value of his membership interest under section 101.205.  The trial court found that on the date of his withdrawal from Elite, Harris's forty-percent interest had a value of $44,849.00.  This finding is supported by legally and factually sufficient evidence in the form of the court-appointed accountant's report itemizing Elite's assets and liabilities, and calculating the total members' equity as the difference between those two figures.  It also is supported by the Management Agreement, under which Harris has a forty-percent interest in the total members' equity.  The value of Harris's interest as found by the trial court is equal to forty percent of the total members' equity as reported by the court-appointed accountant (with both figures rounded to the nearest dollar).

Elite does not dispute that if the Management Agreement is enforced, then Harris must be treated as a forty-percent owner.  It also does not contend that subtracting the company's liabilities from its assets is an inappropriate means of determining the value of the members' equity in the company.  Elite nevertheless asserts that Harris is not entitled to forty percent of the *entirety* of the members'

---

[2] A member of a limited liability company may withdraw only if permitted to do so by contract.  *Compare* TEX. BUS. ORGS. CODE ANN. § 101.107 (West 2012) ("A member of a limited liability company may not withdraw or be expelled from the company.") *with id.* § 101.205 ("A member of a limited liability company who validly exercises the member's right to withdraw from the company *granted under the company agreement* is entitled to receive . . . the fair value of the member's interest in the company . . . .") (emphasis added).

equity. Elite bases this argument on a provision in the Management Agreement that "[n]o Member is entitled to the return of any part of its Capital Contributions or to be paid interest in respect of either its Capital Account or its Capital Contributions." Elite reasons that $25,000.00, a figure representing the sum of Kennebrew and Harris's capital contributions, should be subtracted from the total members' equity before calculating the value of Harris's share—but not before calculating the value of Kennebrew's share. Elite's argument conflates different concepts: a distribution to a withdrawing member of the value of his interest is not the same as a return of capital. There is no testimony in the record supporting Elite's argument, which contradicts both the trial court's finding and the statute.

We accordingly agree with Harris that he is entitled to recover the value of his membership interest as found by the trial court.

**E.     Harris also is entitled to repayment of money he expended on goods and services he expended for Elite's use.**

The trial court additionally found that Harris had not been repaid for the $19,295.29 he expended on supplies and materials for Elite at Kennebrew's request.[3] Although the trial court erroneously found that the failure to repay this amount breached an oral loan agreement, the same result obtains under the written Management Agreement. The terms of that written agreement relevant to these funds are as follows:

> **2.5  Loans by Members.** If the Company does not have sufficient cash to pay its obligations, any member that may agree to do so with the Managers' consent may advance all or part of the needed funds to or on behalf of the Company.

---

[3] In their opening brief, Kennebrew and Elite failed to challenge the finding concerning the amount of unrepaid indebtedness. We therefore must give effect to this finding. *See Energy Maint. Servs. Group I, LLC v. Sandt*, 401 S.W.3d 204, 221 (Tex. App.—Houston [14th Dist.] 2012, pet. denied).

. . . .

**5.3 Loans.** . . . If any member shall make any loan to the company or advance money on its behalf, the amount of any such loan or advance shall not be treated as a capital contribution but shall be a debt due from the company. . . .

Under these provisions, Harris is entitled to recover the $19,295.29 that the trial court found he expended on Elite's behalf and at Kennebrew's request.[4]

We sustain the issue presented in Harris's cross-appeal. Because we conclude that the written Management Agreement must be enforced, we do not reach Kennebrew and Elite's second issue.

## F. The trial court erred in holding Kennebrew jointly and severally liable with Elite.

In his sole remaining issue, Kennebrew argues that there is legally and factually insufficient evidence to support the trial court's ruling holding him jointly and severally liable with Elite. We agree that there is legally insufficient evidence to support the imposition of personal liability.

Elite is a limited-liability company, and by statute, a member or manager of such a company is not liable for any of the company's debts, obligations, or judgments unless "the company agreement specifically provides otherwise." TEX. BUS. ORGS. CODE ANN. § 101.114 (West 2012). Here, however, the Company Agreement specifically provides that "[n]o Member or Manager shall be liable for the debts, obligations or liabilities of the Company, including a judgment[,] decree[,] or order of a court." The Management Agreement contains a similar provision.

---

[4] Kennebrew and Elite assert that the court-appointed accountant determined that these funds constituted a capital contribution rather than a loan, but the record does not support this. The accountant stated that in allocating Harris's funds between his capital contribution and his loans to the company, the accountant relied on the terms of the Management Agreement, and as per the terms of that agreement, he allocated just $10,000.00 as Harris's capital contribution.

16

Each of the monetary awards to which Harris is entitled addresses a liability that is properly owed only by Elite. First, he is entitled to $19,295.29 as reimbursement for funds advanced to or for Elite. Harris asserted, both at trial and on appeal, that in advancing funds to Elite or paying for goods and services on its behalf, he relied on section 5.3 of the Management Agreement. Under the terms of that provision, such advanced funds "shall be a debt due from the company." There is no evidence that Kennebrew assumed personal liability for that debt. Second, as a withdrawing member, Harris is entitled to the value of his membership interest in Elite, which the trial court found to be $44,489.00. Under the terms of the written contract, Harris was permitted to withdraw as a member, and as a result of exercising this contractual right, Harris was entitled to a distribution of the value of his share of the total members' equity in the company. This, too, is an obligation owed by the company rather than an obligation owed by Kennebrew.[5] Third, the trial court found that Harris is entitled to attorney's fees of $50,023.00. Harris pleaded for attorney's fees pursuant to Texas Civil Practice and Remedies Code section 38.001, which authorizes a party to recover reasonable and necessary attorney's fees "in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract." TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (West 2008).[6] To recover attorney's fees under this statute, a party must prevail on a breach-of-contract claim and recover damages. *MBM Fin. Corp.*, 292 S.W.3d at 666. Because Harris is entitled to breach-of-contract damages only from Elite, the statute provides no basis on which to hold Kennebrew jointly and severally liable for attorney's fees.

---

[5] There is no evidence that Kennebrew agreed to buy Harris's interest, nor do the parties argue otherwise.

[6] Although a provision in the Management Agreement also permits recovery of attorney's fees, Harris did not rely on that contractual provision at trial or on appeal.

Harris responds that the trial court properly held Kennebrew jointly and severally liable with Elite because Kennebrew refused him access to Elite's books as required by the Management Agreement, thereby breaching the Management Agreement and committing shareholder oppression. The trial court, however, failed to find that this conduct caused Harris any damages. Thus, the trial court erred in holding Kennebrew jointly and severally liable with Elite for the company's debts, obligations, or liabilities. We accordingly sustain this issue.

## V. CONCLUSION

We conclude that that there is no evidence of an oral loan agreement, but that Elite's failure to reimburse Harris for goods and services he purchased for Elite's benefit breached the written Management Agreement. We further conclude that the trial court erred in rescinding that written agreement rather than enforcing it, and thus, in awarding Harris an amount equal to the return of his capital contribution rather than awarding him an amount equal to the value of his share of the equity in the company. Finally, we conclude that the trial court erred in holding Kennebrew jointly and severally liable with Elite.

In accordance with the Management Agreement, with Texas Business Organizations Code section 101.205, and with the trial court's factual findings that are supported by the record, we modify the judgment to

a.   increase the actual damages awarded to Harris from $29,295.29 to $64,144.19; and

b.   delete the portions of the judgment holding Kennebrew jointly and severally liable with Elite.

Thus, in the judgment as modified, Elite is solely liable to Harris for $64,144.19 in actual damages and $50,023.00 in attorney's fees, together with costs and post-

judgment interest.

/s/ Tracy Christopher
Justice

Panel consists of Justices Christopher, Donovan, and Brown.