

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00471-CV

MAIN STREET SCHOOLS, L.L.C.                           APPELLANTS
D/B/A MONTESSORI COUNTRY
DAY SCHOOL AND WILLIAM J.
VESTERMAN

V.

JASON AND LORI BIMMERLE                               APPELLEES

----------

FROM COUNTY COURT AT LAW NO. 2 OF DENTON COUNTY
TRIAL COURT NO. CV-2012-00879

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

From 2008 to 2011, appellees Jason and Lori Bimmerle paid appellants

Main Street Schools, L.L.C. d/b/a Montessori Country Day School and William J.

---

[1]*See* Tex. R. App. P. 47.4.

Vesterman (collectively, Main Street) for their son's education. The Bimmerles prevailed in the justice court and then the county court at law in a trial de novo in their subsequent lawsuit against Main Street to seek a refund of their advance tuition payment for the 2011–2012 school year. The county court used rescission to prevent unjust enrichment as a basis to refund half of the Bimmerles' advance tuition payment, and Main Street appealed, raising three issues. We reverse the county court's judgment and render judgment for Main Street.

## II.  Discussion

Main Street argues that the county court erred by (1) denying its motion for judgment on the Bimmerles' breach-of-contract claim at the close of the Bimmerles' case; (2) awarding a remedy to the Bimmerles that was unsupported by any legal claim that could support it; and (3) rescinding a valid contract and awarding damages to the Bimmerles under an unjust enrichment theory that was not pleaded, proven, or addressed by either party during trial.

### A.  Standard of Review and Applicable Law

The trial court made findings of fact and conclusions of law. A trial court's findings of fact have the same force and dignity as a jury's answers to jury questions and are reviewable for sufficiency of the evidence to support them by the same standards. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *see also MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 663 n.3 (Tex.

2

2009). We may review conclusions of law to determine their correctness based upon the facts, but we will not reverse because of an erroneous conclusion if the trial court rendered the proper judgment. *City of Austin v. Whittington*, 384 S.W.3d 766, 779 n.10 (Tex. 2012) (citing *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002)); *H.E.B., L.L.C. v. Ardinger*, 369 S.W.3d 496, 513 (Tex. App.—Fort Worth 2012, no pet.).

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362–63 (1960). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

During trial, the Bimmerles stated that their cause of action was for breach of contract, and the trial court agreed that it was a breach-of-contract case,

3

stating, "I don't think there is any other way to construe this." The Bimmerles stated that their claim was either for "our oral contract for the payment of tuition and the receipt of education for [the child], or it is a . . . repeated promise to get the money and pay it back with interest."[2]

The requirements of a valid contract are: (1) an offer; (2) an acceptance in strict compliance with the offer's terms; (3) a meeting of the minds; (4) each party's consent to the terms; (5) consideration; and (6) execution and delivery of the contract with the intent that it be mutual and binding. *Hubbard v. Shankle*, 138 S.W.3d 474, 481 (Tex. App.—Fort Worth 2004, pet. denied). The elements of written and oral contracts are the same and must be present for a contract to be binding. *Id.* The essential elements of a breach of contract claim are (1) a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages to the plaintiff resulting from the breach. *Inova Renovations, L.L.C. v. Jones*, No. 02-13-00397-CV, 2014 WL 7204497, at *2 (Tex. App.—Fort Worth Dec. 18, 2014, no pet.) (mem. op.).

## B. Evidence

Lori Bimmerle testified that she and her husband enrolled their child with Main Street in the 2008–2009 school year when the child was three years old and that he completed two years of prekindergarten and kindergarten at the

---

[2]At the trial's conclusion, the Bimmerles also argued that if the original 2008 contract applied, then Main Street breached it because it did "not giv[e] back everything beyond what would be considered the deposit amount," but they do not elaborate upon that argument in their brief.

school. The 2011–2012 school year would have been their son's first grade year.

Lori stated that she paid tuition month-to-month during her son's first and second years at the school but then prepaid during his kindergarten year because the school offered a tuition discount for paying in full. She paid the school $6,296, the amount for the full year with a discount, for her child's first grade year. Only after she had made the advance tuition payment did Lori decide that the child would not go into first grade at the school.[3]

The parties' August 11, 2008 contract contains the following portions relevant to the issues on appeal:

> Agreement
> The following statements conform to the Texas Childcare laws governing all childcare facilities. In signing this form, [] a parent or guardian, we hereby agree to school policies and conditions as follows:
>
> . . . .
>
> 7. The school agrees to present the Montessori program suitable to the child. No guarantee is made regarding achievement, social adjustment, or speed of progress.
>
> 8. It is understood that once application is made, registration and materials fees are not refundable. The tuition deposit is refundable only when the child is not accepted.

---

[3]Lori said that the child's behavioral issues in the classroom during kindergarten and the school's reaction led to the Bimmerles' decision not to send the child there for first grade and to ask for a refund of the advance tuition payment. Lori said that when she asked for a refund of her advance tuition payment, Main Street told her that "[t]hey would work on it." Lori followed up on that statement by phone and e-mail before sending a demand letter.

5

9. The ideal Montessori program begins at around age three and continues through age six or seven; therefore, parents should keep this in mind when they make a decision to bring a child here. When application is accepted, enrollment is for the full term. The family who enrolls a child hereby understands and agrees that tuition refunds or allowances will not be made for absence from school due to illness or other circumstances. The family further understands and agrees that no adjustment or refund of fees or tuition, including the May advance tuition and enrollment and material fees, will be made if a child is withdrawn from school by the parent for any reason before the end of the period for which he has been enrolled.

10. The school reserves *the* absolute right to dismiss a student if family is unable to follow the policies of the school or practice the principals of Dr. Montessori; under these circumstances, and only these circumstances, -partial prorated tuition will be refunded.

11. The Elementary school, made up of Kindergarteners and First Graders, is reserved for those children who have extensive experience in the Montessori environment, who have attended at least one semester of five full days a week, and who stay here for the First Grade. Kindergarteners who do not plan to be with us through the First Grade will remain in the Preschool.

. . . .

13. Parents agree that they understand the school's program and that this contract represents the full agreement between them, and that it shall not be modified or amended in any fashion except by written instrument to such effect signed and agreed to by both Parties and attached to this contract.

Vesterman, the school's owner, testified that the agreement's purpose was to run the school properly so that Main Street could educate children properly and that parents sign the agreement in order to enroll their children in the school. Bimmerles' counsel then asked Vesterman, "And your promise to the Bimmerles was to educate [the child] . . . in exchange for tuition? For them to pay you to

6

educate [him]?" Vesterman replied, "Yes. And we did that." Vesterman testified that the 2008 agreement was the entire agreement between the parties "[u]nless something were signed and attached to it."

Vesterman further testified that when a family enrolls a child at the school, they are given options on payment and tuition. He stated that if a parent were to enroll a child in the first grade, the parent would sign an agreement and other enrollment documents, pay a $200 registration fee, pay a $300 materials fee, and make a tuition deposit. The amount of the deposit would depend on how the parent chose to pay—monthly (one month's tuition as a deposit) or annually (full-year tuition with an 8% discount). Vesterman testified that the 8% discount was offered as an incentive for parents to pay the full year. The Bimmerles took this incentive and paid a full year's tuition in exchange for the 8% discount instead of paying month-to-month with no discount.

Although the Bimmerles' son did not attend first grade at the school, there is no evidence that either party breached the contract. Vesterman stated that he did not ask the Bimmerles' child to leave the school, and Lori testified that when she told him that the child would not be attending first grade at the school, she was told that the child was welcome back at the school. The Bimmerles paid the contract price in full and the school agreed and remained ready to perform the service of educating the Bimmerles' son.[4] Indeed, the trial court made no finding

---

[4]The gravamen of the Bimmerles' claim, as set forth in their original petition, appears to be that after the Bimmerles had paid the advance tuition and

7

of fact or conclusion of law that a breach of the agreement occurred by either party.

## C. Analysis

In its conclusions of law, the trial court stated that the August 11, 2008 contract was for the 2008–2009 school year and that another contract was formed when the Bimmerles made the 2011–2012 tuition payment in April 2011.[5]

While we may disagree with the trial court's conclusion of law as to the creation of a new contract between the parties,[6] whether a new contract was

---

subsequently decided not to enroll their son, they demanded the return of the advance tuition since their son "would not be attending [Main Street's] school the following year as initially anticipated," and Main Street refused to return the tuition deposit. And while the trial court admitted into evidence e-mail messages exchanged between Lori and Vesterman regarding a tuition refund, the record does not reflect that any of these messages led to a writing agreed to and signed by the parties and attached to the August 11, 2008 contract. Lori Bimmerle stated in one of her e-mail messages that she wanted a contract in place to formalize Vesterman's assertion that Main Street would refund the tuition, but there is nothing in the record to show that any such contract was ever created.

[5]In its third conclusion of law, the trial court found that this subsequent contract "obligated Defendants to enroll Plaintiffs' minor child and educate him for the 2011-2012 school year."

[6]The record reflects that the Bimmerles made the advance tuition payment in April 2011 for their son's first grade year pursuant to the terms of the August 11, 2008 contract. Lori's testimony shows that the Bimmerles were following the "ideal Montessori program" set out in paragraph 9 in the 2008 contract when they enrolled their child at age three and that they had been planning to take advantage of the provision in paragraph 11 that restricted elementary school (kindergarten and first grade) availability to only those students who had attended at least one semester of five full days a week and who stayed for the first grade. The Bimmerles' full-year advance payment of $6,296 reserved their child's place in the first grade class, as set out in paragraphs 9 and 11 of the August 11, 2008 contract. The August 11, 2008 contract also contains other

8

formed when the 2011–2012 tuition payment was made is immaterial because there is no evidence of any breach of this agreement either by the school or the Bimmerles. Nor was there any finding or conclusion by the trial court that any such breach occurred. Nevertheless, the trial court determined that the Bimmerles were entitled to a refund of half of their advance tuition payment ($3,129.84), relying on its theory that a new contract had been created with the April 2011 tuition payment and on the doctrine of rescission and unjust enrichment.

Although the trial court equivocated at the conclusion of trial with regard to the application of equity and rescission to prevent unjust enrichment,[7] rescission would not have been the appropriate remedy here. We have previously stated,

> Rescission is an equitable remedy that seeks to set aside an otherwise legal contract *due to fraud, mistake, or for some other reason when it is necessary to avoid unjust enrichment of the non*[-]*complaining party to the contract*, so that the parties thereto may be restored, insofar as is possible, to the status or position they were in prior to execution of the contract. Rescission is thus an "undoing" of the contract and generally used as a substitute for monetary damages when such damages would not be adequate.

---

essential terms governing the parties' relationship that are not demonstrated elsewhere in the record or in the alleged separate April 2011 tuition agreement proposed by the Bimmerles and found by the trial court. These terms included the requirements to modify or amend the 2008 agreement and the circumstances under which parents could receive a tuition refund.

[7]The trial judge stated that he believed that the pleadings pointed to an attempt of rescission and that this "allows the Court to act in a manner in which it can deal with principles of equity. And specifically the principle of unjust enrichment."

*City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 732 (Tex. App.—Fort Worth 2008, pet. dism'd) (emphasis added) (citations omitted). And, as the supreme court has explained, because rescission is an equitable remedy, "fault is relevant." *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 826 (Tex. 2012); *see Kennebrew v. Harris*, 425 S.W.3d 588, 595 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) ("Because rescission is a remedy, it is available only if the other party to the contract has committed some wrong.").

The only claim presented by the Bimmerles was for breach of contract; they made no allegations of fraud or mistake. Likewise, the trial court did not find fraud or mistake, and there is no evidence to support any such finding.[8] Indeed, there is no evidence in the record before us of any wrongdoing by Main Street that would support recovery by rescission under the terms of either the 2008 contract or the purported 2011 contract. *See* George P. Roach, *Rescission in Texas: A Suspect Remedy*, 31 Rev. Litig. 493, 568 (2012) ("Texas courts are generally opposed to equitable remedies for breaches of contract, and rescission

---

[8]Although the Bimmerles attempted to argue, and the trial court made a conclusion based on, disparate treatment as compared to parents who paid month-to-month with regard to tuition refunds, the Bimmerles' advance tuition payment enrolled their child for the 2011–2012 school year and provided them with an 8% discount that parents who paid month-to-month did not receive, and there is no indication that the Bimmerles are members of a protected class. *See* Ian Ayres, *Market Power and Inequality: A Competitive Conduct Standard for Assessing When Disparate Impacts Are Unjustified*, 95 Calif. L. Rev. 669, 678 (2007) (observing that an airline with market power on a particular route may charge business travelers higher fares than tourists because business travelers have a less elastic demand for air travel and hence are willing to pay more).

is rare."); *see also Damstra v Starr*, 585 S.W.2d 817, 820 (Tex. Civ. App.—Texarkana 1979, no writ) ("A person cannot rescind a contract merely because, in the light of subsequent developments, a provision thereof operated to his disadvantage."); *Chenault v. Shelby Cnty.*, 320 S.W.2d 431, 433 (Tex. Civ. App.—Austin 1959, writ ref'd n.r.e.) (observing that "a party cannot avoid his contract on the ground that he received less in value than he supposed, or that what he has received has no value at all unless he shows additional facts entitling him to equitable relief such as fraud or mistake"); *cf. Houston v. Ludwick*, No. 14-09-00600-CV, 2010 WL 4132215, at *3, *12 (Tex. App.—Houston [14th Dist.] Oct. 21, 2010, pet. denied) (mem. op.) (affirming judgment on breach of fiduciary duty and unjust enrichment claims that included rescission of deeds conveying two condominium units).  Therefore, rescission was not available as a remedy, whether pleaded or unpleaded.  We sustain Main Street's three issues.

## III.  Conclusion

Having sustained all of Main Street's issues, we reverse the trial court's judgment and render a take-nothing judgment for Main Street.

/s/ Bonnie Sudderth
BONNIE SUDDERTH
JUSTICE

PANEL:  LIVINGSTON, C.J.; WALKER AND SUDDERTH, JJ.

DELIVERED:  June 4, 2015

11